# IN GENERAL TERM, 1873.

---

Alonzo Blair *v.* Jacob N. Buser, Appellant.

Promissory Note—*payee, maker, endorser, consideration*— Evidence—*introduction and order of.*

Testimony to show fraudulent representations on the part of payees of a note to the maker, is irrelevant and inadmissible against the holder of a note for value, purchased before maturity. Though the maker of a

note payable in bank may have a valid defense to it, as against the payees, yet a *bona fide* endorsee for value may recover upon it. It is only where want of consideration is proved, or its execution was procured by fraud, that the *onus* of proving value paid, and purchase before maturity, is cast upon the holder.

It is ordinarily within the province of counsel to arrange the order of time for the introduction of evidence, but it is the discretion of the Court, that all causes may be proceeded with, "speedily and without delay," to so control the order of proof as to require the observance of the principle of law, that where a fact is necessary to be proved to render subsequent evidence relevant, such fact shall first be established in evidence, without reference to order of time or connection with other testimony. Hence, where in a suit by the endorsee fraud is alleged to have been practiced on the maker of a promissory note, the Court may refuse to hear evidence touching such alleged fraud, until some evidence is given bringing knowledge of it home to the plaintiff, before his purchase of the note.

*Barbour & Jacobs,* for appellant.
*Hord & D.,* (Shelbyville) for appellee.

Newcomb, J.—The plaintiff, as endorsee of Wing & Vandusur, sued the defendant on a promissory note payable at the First National Bank of Indianapolis.

The complaint alleges that the note was endorsed to plaintiff for value, by the payees, before maturity, and that the same was duly protested for non-payment.

The defendant filed the general denial and five special answers. Before going into trial he withdrew the general denial and rested his defense on the affirmative answers.

There was a verdict for the plaintiff, and judgment was rendered thereon over defendant's motion for a new trial.

In his third answer the defendant pleaded that the note was given for a patent right for a bag-holder of which the payees were the owners, and that the agent of Wing & Vandusur made certain false and fraudulent representations whereby defendant was induced to purchase said patent right for certain specified territory, of all of which plaintiff had notice when the note was endorsed to him, &c.

To this answer the plaintiff filed a general denial.

There are various errors assigned, but as one only is noticed in the appellants' brief, we confine ourselves to the question raised by that assignment.

On the trial at Special Term, the defendant was a witness in his own behalf, and testified that the note was given for the patent bag-holder described in his answer. Divers interrogatories were then propounded to him by his counsel as to the alleged fraudulent representations of the payees to induce him to sign the note. The plaintiff objected to the introduction of the proposed evidence, for the reason that it was irrelevant, and inadmissible, unless it should also be shown that the plaintiff became the owner of the note after its maturity, or without paying value therefor, or with notice of the alleged defense. The defendants counsel then stated that they declined to say what further facts they expected to prove. Thereupon the Court remarked that it would be useless to consume time by introducing evidence tending to show fraud on the part of the payees of the note, unless it was the intention to introduce evidence to show one or the other of the facts indicated by plaintiff's counsel in his objections; but if counsel for the defendant would say that they expected to introduce evidence tending to prove either of said facts, the objection would be overruled, otherwise it would be sustained. To this the defendant's counsel responded, that at that stage of the case they declined to make any statement of what they intended to prove; whereupon the Court sustained the objection to the several questions bearing on the fraudulent procurement of the note by the payees, to which ruling the defendant duly excepted.

The note in suit being payable in a bank in this State, a *bona fide* endorsee, for value, would be entitled to recover upon it, notwithstanding the maker might have a valid defense to it as against the payees. The rule is well estab-

lished by numerous authorities, that where a want of consideration for negotiable paper is proved, or that its execution was procured by fraud, the law casts upon the holder the *onus* of proving that he gave value for it, and that he purchased it before maturity. *Harbison* v. *The Bank of the State*, 28 *Ind.*, 133; *Bailey* v. *Bidwell*, 13 *M. & W.*, 73; *Sistermans* v. *Field*, 9 *Gray*, 331; *Tucker* v. *Morrill*, 1 *Allen*, 528; *Hurt* v. *Potter*, 4 *Duer*, 458; *N. Y. & Va. Stock Bank* v. *Gibson*, 5 *Duer*, 574; 1 *Parsons on Bills and Notes*, 188; *Harvey* v. *Towers*, 4 *E. & L., Eng.*, 531.

The form of the issues in the present case relieved the plaintiff from proving that he gave value for the note, or that he purchased it before due. These facts were averred in the complaint, and not being denied, stood as admitted. The only issues were, was the execution of the note procured by the fraud of the payees, and had the plaintiff notice of the fraud when he purchased it? On each of these issues the burden of proof rested upon the defendant. To prove the fraud could avail him nothing, unless he brought notice of the fraud home to the plaintiff. It did not devolve on the plaintiff in the first instance to establish the negative of the defendant's averment that he had such notice.

Such being the issues, had the Court authority to require an assurance, or statement from defendant's counsel that they would follow up the proposed proof of the fraud charged, by evidence of notice thereof to plaintiff, before he became the owner of the note?

It is a general rule of practice in this State, that the order of time for the introduction of evidence in support of the different parts of an action or defense, must be left to the discretion of the party introducing the evidence. *Throgmorton* v. *Davis*, 4 *Blackf.*, 174; *Rushville, &c., Railroad Co.*, v. *McManus*, 4 *Ind.*, 275; *Hudden* v. *Johnson*, 7 *Id.*, 374; *Piatt* v. *Dawes*, 10 *Id.*, 60; *Fowler* v. *Hawkins*, 17 *Id.*, 212.

But this rule is not without qualification. In *Nordyke* v. *Shearon*, 12 *Ind.*, 346, the Supreme Court held that the judge presiding at the trial might exercise some discretion in controling the order of proof, for the purpose of expediting business, and preventing a waste of time. In that case the defendants pleaded as a set off, certain repairs on plaintiff's property. Having proved the repairs they proposed to prove that they were authorized by one Dugdale, and then to prove that the latter was the agent of the plaintiff. The Court required them to first prove the agency, and then that the agent authorized the repairs. This the defendants declined to do, and the evidence was not heard. On appeal the Supreme Court said: " We think in this the Court abused no discretion. If Dugdale was not the agent, it was a waste of the time of the Court to hear evidence as to his ordering repairs. And it was no hardship to require the defendants to first prove his right to order them. Without such proof, the evidence as to his ordering them, had no relevancy to the case."

In *Goings* v. *Chapman*, 18 *Ind.*, 194, the like doctrine is held. One item in the plaintiff's account was an order given by defendant to plaintiff on one Neff, "not accepted by said Neff." At the trial the plaintiff offered the order in evidence, but the defendant objected, on the ground that plaintiff had not proved a refusal by Neff to accept the order, and the Court refused to admit the evidence unless the plaintiff would first prove a presentation to Neff and his refusal to accept. The Supreme Court sustained this ruling, on the ground that " the order, unless it was presented to the drawee for payment, constituted no valid demand against the drawer, and without proof of such presentation, could not be held effective as evidence in the case, and was, therefore, irrelevant."

The principle asserted in these cases is, that where a pre-

Blair *v.* Buser.

vious fact is necessary to be proved to render the offered evidence at all relevant, such fact must be first proved.

It may not be logically correct to say that in the case at bar the notice was the prior fact to be established, as the natural order would seem to be to first prove the fraud; but proof of notice was as essential as the proof of fraud, and there was no hardship, or injustice in requiring the professional word of defendant's counsel that they would, after making their proof on the question of fraud, introduce evidence of plaintiff's knowledge of the fraud. Had the defendant's counsel asserted that they had no evidence to offer on the latter point, it would scarcely be claimed that the court was, nevertheless, bound to waste its time in hearing evidence on the question of fraud. And we think the refusal of counsel to state whether or not they had, and would produce evidence of notice, might reasonably be regarded by the court as an admission that no such evidence would be offered.

Under such circumstances a court is under no obligation to consume time in receiving evidence that in the end must prove worthless to the defense. If the defendant had no evidence to sustain his allegation of notice, he was not injured by the refusal of the court to hear the evidence on the charge of fraud, and therefore has no cause of complaint. If he had such evidence it was easy for him to say so, and that was all that the court required as a prerequisite to the admission of the rejected testimony.

The judgment at Special Term is affirmed with costs.

---

NOTE.—*Consideration* 10 *American Law Register,* 344:

The fact that the purchaser of the assets was induced to enter into the agreement by false and fraudulent representations of the other partner respecting the partnership assets, is no defense to an action upon the note by a *bona fide* holder, so long as the agreement stands, and the defendant

Blair *v.* Buser.

retains the property transferred without offering to re-assign the same, or demanding a return of the note. 58 *Barb., Springer* v. *Dwyer.*

Where the endorsee of a note produces it on the trial, it is to be presumed he is the holder in good faith, and that he received it before maturity. If the defendant alleges the contrary, the burden of proof is upon him. 58 *Barb., Springer* v. *Dwyer.*

10 *American Law Register,* 762:

" A negotiable note transferred before due in the regular course of business to a creditor, in payment of, or as security for a pre-existing debt, taken in good faith and for a valuable consideration, is collectable in the hands of the creditor, notwithstanding any equities existing as between the original parties thereto. 11 *Conn.,* 388; 29 *Id.,* 479. See also, 1 *American Law Register,* (N. s.) 35. Fraud is not available as a defense in cases of this character."

The fundamental principle of the law, applicable to negotiable paper, is that it is the representative of money, and may be used in all mercantile transactions as money, or as its substitute.

" The tendency of the law in respect to the legitimate uses of negotiable paper, is thus referred to in 1 *Parsons on Notes and Bills,* 257,—" that whether negotiable paper is sold or discounted, or endorsed over to pay a new debt, or for a new purchase, or to secure a new debt, or an old debt, or to pay an old debt, it becomes in each case the property of the holder, and carries with it all the privileges of negotiable paper, unless there be something in the particular transaction which is equivalent to fraud, actual or constructive."

In a note to this case, Redfield says : " It is common, and entirely in the due course of business to endorse a note, or bill in payment, or as security for a pre-existing debt, and such an endorsement of negotiable paper before due, will exclude equitable defenses.

The cases are collected and classified in *Atkinson* v. *Brooks,* 26 *Vt.,* 569, and the note to *Le Breton* v. *Pierce,* 1 *American Law Register,* (N. s.) 35.

As between the *original parties* to a note a failure of consideration is a good defense to an action brought on the note. *Britton* v. *Hall,* 1 *Hilt,* 528

If the action is brought by the endorsee of the note, and there is no evidence impeaching his title, proof of failure of consideration is inadmissible. *Same.*

If negotiable notes and bills come into the hands of a third person in good faith, and for value, without any notice of any defect or title, or of circumstances that should create suspicion, he obtains a good title. *Belmont Branch Bank* v. *Hoge,* 7 *Bos'w.,* 543 ; 35 *N. Y.,* 5 *Tiff.,* 65 ; *S. C. affirmed.*

A party who has a debt due him, and who takes in payment a bill, or note not due, thus extending the time of collecting his debt, until such bill,

or note matures, is a holder for value. *Superior Court, Burns* v. *Rowland,* 40 *Barb.,* 368.

*Subsequent Notice.*—A *bona fide* holder of a bill, or note, who takes the same with no other knowledge than the paper furnishes, has the right in all cases to treat the parties thereto, as liable to him, in the same manner and order, and to the same extent as they appear on the instrument—any knowledge acquired by him, at a subsequent period has no effect. *Hoge* v *Lansing,* 35 *N. Y.,* (8 *Tiff.*) 136.

A party who takes a bill of exchange, or negotiable promissory note for value, before maturity, with knowledge of the consideration of the same, but without notice of the failure of such consideration, is entitled to recover thereon. *Davis* v. *McCready,* 4 *E. D. Smith,* 565. *S. C. affirmed.* 17 *N. Y.* (3 *Smith*), 230.

It is no defense to an action against the maker of a promissory note by an indorser for value, that the note was made for the accommodation of the payee, and was received by the plaintiff with knowledge of that fact. *Pettigrew* v. *Clave,* 2 *Hilt,* 546.

The transfer of negotiable paper to a *bona fide* purchaser, for value, before maturity, gives a perfect title, which will pass to a subsequent purchaser, having notice that the original consideration was fraudulent. *Shell* v. *Telford,* 4 *N. Y. Leg ,* Obs., 307.

One who buys a negotiable instrument for value in good faith, and *before maturity,* takes it free from equities existing against the payee. *Smith* v. *Babock,* 2 *Wood., C. & M.,* 246, 287 ; 3 *McLean,* 517 ; 4 *McLean,* 427 ; 2 *Wall.,* 110, 121.

A *bona fide* holder of a negotiable instrument for a valuable consideration without any notice of facts which impeach its validity, as between antecedent parties, if he takes it under an endorsement made before the same becomes due, holds the title unaffected by these facts, and may recover thereon, although between the antecedent parties the transaction may be without any legal validity. And the holder of any negotiable paper, before it is due, is not bound to prove that he is *bona fide* holder for a valuable consideration without notice, for the law will presume that, in the absence of all rebutting proofs. 16 *Pet.,* 1 ; 20 *Howard,* 343, 365.

Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. 2 *Wall.,* 110, 121.

Where it is proposed to impeach the title of a holder for value, by proof of facts, and circumstances outside of the instrument itself, it must be shown that he had *knowledge* of such facts and circumstances at the time the transfer was made. 13 *Pet.,* 65; 14 *Pet.,* 318; 3 *T. R.,* 80 ; 4 *Mass.,* 270; 12 *Johns.,* 305 ; 12 *Pick.,* 345; 20 *Howard,* 343, 365 ; 5 *Wend.,* 566.

In 1 *American Law Register,* 745: \* \* that express or actual notice

Blair *v.* Buser.

that the note was without consideration, was not necessary; that it is suffi-cient if the circumstances brought home to the plaintiffs are of such a strong and pointed character, as necessarily to cast a shade upon the transac-tion, and put them upon inquiry; that the indorsees are not charged with notice because of any want of diligence on their part in making inquiry, or if they took the note under suspicious circumstances, provided they had no notice actual or constructive of the equities between the original parties, but if the transfer of the note was attended with such circumstances as to put the taker on his guard, or if he must have known therefrom that the person offering it had no right to transfer it, then he was bound to make inquiry.

*Sec.* 171, 2 *Greenleaf,* 151. But, on the other hand, no defect, or infirmity of consideration, either in the creation, or in the transfer of a negotiable security, can be set up against a mere stranger to the transaction, such as a *bona fide* holder of the bill, or note, who received it for a valuable consider-ation, at, or before it became due, and without notice of any infirmity therein.

The same rule will apply, though the present holder has such notice, if he derives his title to the bill from a prior *bona fide* holder for value.

Every such holder of a negotiable instrument is entitled to recover upon it, notwithstanding any defect of title in the person from whom he derived it; even though he derived it from one who acquired it by fraud, or theft, or robbery.

In a suit by the assignee of a promissory note against the maker, the defendant is estopped to set up the invalidity of the note, as between him-self and the payee, if the plaintiff purchased the note upon the promise of the defendant to pay it. 1 *Blackf.*, 248; 1 *Ind.*, 230; 8 *Ind.*, 501; 11 *Ind.*, 1, 112.—REPORTER.