THE STATE, ROBERT STOLL, PROSECUTOR, v. PHILIP I. GARISS, OVERSEER OF THE POOR OF THE TOWNSHIP OF WALPACK, SUSSEX COUNTY.

1. The mother of a bastard child is a party to the proceedings taken under the bastardy act for indemnifying the township.
2. If one of the justices, making the order of affiliation, is a cousin of the mother of the bastard, the proceedings will, on *certiorari*, be quashed.

On *certiorari* in matter of bastardy.

Argued at June Term, 1875, before Justices SCUDDER, KNAPP and DIXON.

For the prosecutor, *Kays*.

For the defendant, *L. Van Blarcom*.

The opinion of the court was delivered by

DIXON, J.   This *certiorari* brings up for review an order of bastardy, made January 20th, 1874, adjudging the prosecutor to be the father of a bastard child, and ordering him to pay certain designated sums for the child's support; and also, ordering the mother of the child to pay for the same purpose a certain weekly sum, in case she should not nurse and take care of the child.

By the case, it appears that one of the justices making the order was related, in the third degree, to the mother of the child, being her cousin, and that upon the trial of the matter being called before the justices, the prosecutor interposed a challenge to the jurisdiction of that justice in the cause, which challenge was overruled, and upon this alleged error the prosecutor relies for a reversal of this order; his position being that the justice was so related to a party in the controversy as to be disqualified from sitting in judgment thereon.

The first question raised is, whether the mother of the bas-

tard child stands in the position of a party to the proceeding, of which the prosecutor complains. The parties to a legal controversy are those who thereby seek redress, and those against whom immediately redress is sought. That the mother stands in this relation to an action under the law concerning bastardy, is evident upon an examination of the statute and the judgment which it authorizes. The first section of our act, as revised in 1846, (copied almost from 18 *Eliz.*, *ch.* 3, the oldest of the bastardy acts,) directs two justices, upon examination, &c., to take order for the better relief of the township in which any bastard may be born; and for charging *the mother* or *reputed father* with the payment of money weekly or other sustenance for the support of the child; and if the *mother or reputed father* shall make default in performing such order, *she* or *he* may be committed to the house of correction unless *she* or *he* give security, &c. The 5th section of our act (copied almost from 13 and 14 *Car. II*, and next in order of time to the act of 18 *Eliz.*) authorizes two justices, where the *putative father* or *mother* of a bastard runs out of the township, leaving the bastard a charge upon the township, to issue their warrant to seize the goods and chattels and to let out and receive the rents and profits of the lands and tenements of the *putative father* or *mother* for the support of the child. Throughout these statutes, the father and mother of the child are placed upon precisely the same footing. Every mode of redress which is provided against the father is provided also against the mother. Both father and mother also should be summoned to appear before the justices, or they should otherwise be subjected to the jurisdiction of the justices before any order is made. *Bacon's Ab.*, *Bastardy D.*, *note* 8.

These sections alone point out the kind of redress which the law provides. Sections 2, 3 and 4, which are taken from 6 *Geo. II*, are mainly to secure the person of the reputed father pending the question of his liability, while the act of March 18th, 1858, is chiefly designed to give the reputed father an opportunity of having that question passed upon

by a jury, before the order of affiliation is made. In this question the mother has, legally, no concern, and she may not appear as a party, but that is merely an issue of fact raised by the putative father in the course of the proceedings before the justices, which, at his request, they are required to submit to a jury, and as soon as that issue is found against him, and the verdict of the jury recorded by them, they go on to judgment in the proceedings instituted before that side trial was demanded. The parties to these original proceedings remain the same, and it is quite evident that these parties are the township or its overseer upon the one side, and the father and mother upon the other. It was urged on behalf of the defendant, that the mother could not be considered as a party, because she was always regarded as a competent witness in the proceedings. But her admissibility as a witness arises from the necessity of the thing, and is likened to the case of hue and cry, where the person robbed shall be admitted to prove the fact of robbery. 1 *Burns' Just.* 183, 210; *Rex* v. *Rook*, 1 *Wilson* 340.

The next question raised is, whether the relationship disqualifies the justice. Upon this point it is insisted for the defendant that the two justices do not constitute a court of record, and therefore they are not within the prohibition of our "act the better to promote the impartial administration of justice," passed February 24th, 1820. *Nix. Dig.* 441. But without determining the character of the tribunal, it seems to me that the disqualification exists independent of the statute, and extends to every judge called by the law to sit in judgment upon the rights of his fellow men. The maxim which lies at the root of this disqualification, "*nemo debet esse judex in propria causa*," embodies so essential a principle of natural justice that it is said even the omnipotence of parliament cannot drive it from the English courts. The courts of justice may be destroyed, but they cannot be separated from this law of nature and live. The cases in which the principle has been exemplified and applied, are far too numerous for citation. Many of them have held that a

much more distant kinship than existed here, disqualified the judge. The presumption of bias and partiality, which arises from the consanguinity of a judge to the party, is one of law, and is conclusive. Such relationship to the party is a cause of principal challenge against a juror. Decency forbids that a man should be seen sitting in judgment for or against his father, brother, cousin, &c., and such a judgment is said to be absolutely void. *Bacon's Ab., Juries E.* 5 ; *Edwards* v. *Russel*, 21 *Wend.* 63 ; *Foot* v. *Morgan*, 1 *Hill* 654 ; *Oakley* v. *Aspinwall*, 3 *Coms.* 547 ; *Chambers* v. *Clearwater*, 1 *Keyes* 310 ; *Vanauken* v. *Beemer*, 1 *South.* 364 ; *Peck* v. *The Freeholders of Essex*, 1 *Zab.* 656.

In the case before us, the cousin of the mother undertook to adjudicate between the mother and the father, how much each should contribute towards indemnifying the township for the support of their child ; and it would shock our common sense of justice if such an adjudication could stand.

If the two justices did not constitute a court of record, then the case is not within the letter of the statute, and a challenge, *eo nomine,* was not authorized. The justice ought, upon his own motion, to have declined to sit; or, if he persisted, a writ of prohibition would, at common law, issue to prevent him ; or, upon his going on to judgment, his kinship might be assigned as error in fact, and the judgment reversed. *The Company, &c., of Chester* v. *Bowker*, 1 *Str.* 639.

But, at all events, when such adjudications are legally brought up by *certiorari,* and the fact of interest is made legally to appear, as in this cause, by a statement agreed upon, the court will do complete justice. *Dimes* v. *Grand Junc. Canal*, 3 *H. L. C.* 759, 785.

       Let the proceedings below be quashed.