# Talley, Appellant, v. Talley.

*Divorce—Adultery—Evidence of wife's good character.*

In a suit for divorce by a husband against a wife, where the ground is adultery, evidence of the wife's good reputation for virtue and chastity is inadmissible.

*Divorce—Adultery—Charge.*

A wife may condone the adultery of her husband so as to allow him to be divorced from her for the same offense committed by her subsequently to her condonation.

*Divorce—Adultery—Charge.*

In a suit for divorce on the ground of adultery, respondent requested the court to charge as follows: The two essential elements of the offense are, first, opportunity, and, second, adulterous desire or inclination of the parties charged. If these two facts appear in conjunction, you are at liberty to draw an inference of adultery provided you are satisfied thereof by a preponderance of the evidence, and believe the testimony offered in support of the charge. Either of these two facts alone would not be enough to justify you in returning a verdict against the defendant, and if you find that either is absent, your verdict must be in her favor. *Held*, that the court committed no error in refusing to affirm the point, the jury having been referred to the general charge where adequate instructions were given

Argued March 20, 1906. Appeal, No. 27, Jan. T., 1906, by plaintiff, from judgment of Superior Court, Oct. T., 1905, No. 103, reversing judgment of C. P. No. 5, Phila. Co., March Term 1904, No. 12, on verdict for libelant in case of John E. Talley v. Susan E. Talley. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and STEWART, JJ. Reversed.

Appeal from Superior Court. See 29 Pa. Superior Ct. 535. The opinion of the Supreme Court states the case.

*Error assigned* was the judgment of the Superior Court.

*Avery D. Harrington,* with him *Herbert M. Boyer,* for appellant.—The wife could condone the alleged adultery of the husband : Delliber v. Delliber, 9 Conn. 233 ; Keats v. Keats, 1 Sw. & Tr. 334 ; Bernstein v. Bernstein, 69 Law Times Rep. 513 ; Bronson v. Bronson, 7 Phila. 504 ; Cumming v. Cumming, 135 Mass. 386 ; Seller v. Seller, 1 Sw. & Tr. 482 ; Jones v. Jones, 18 N. J. Eq. 33 ; Masten v. Masten, 15 N. H. 159 ; Morrell v. Morrell, 1 Barb. 318 ; Matchin v. Matchin, 6 Pa. 332.

*Louis B. Runk,* with him *John R. Read, Silas W. Pettit* and *H. B. Gill,* for appellee, cited on the question of condonation : Astley v. Astley, 1 Hagg. Eccl. 714 ; Peck v. Peck, 44 Hun, 290 ; D'Aguilar v. D'Aguilar; 1 Hagg. Eccl. 773 ; Dance v. Dance, 1 Hagg. Eccl. 794 ; Wood v. Wood, 2 Paige Ch. 108 ; Johnson v. Johnson, 1 Edw. Ch. 439 ; Hofmire v. Hofmire, 7 Paige, Ch. 60 ; Grosvenor v. Grovesnor, 34 W. R. 140 ; Ellis v. Ellis, 4 Sw. & Tr. 154 ; Merrill v. Merrill, 58 N. Y. Supp. 503 ; Moorhouse v. Moorhouse, 90 Ill. App. 401 ; Gardner v. Gardner, 9 No. Dak. 192 (82 N. W. Repr. 872); Fisher v. Fisher, 93 Md. 298 (48 Atl. Rep. 833); Costello v. Costello, 191 Pa. 379 ; Akers v. Akers, 22 Pa. C. C. Rep. 550 ; City of Pittsburg v. Kalchthaler, 114 Pa. 547.

OPINION BY MR. JUSTICE BROWN, May 14, 1906 :

The appellant was the libellant in the common pleas in an application for a divorce from the appellee on the ground of adultery. On issue joined there was a verdict sustaining libellant's complaint, and a decree was subsequently made divorcing

him from his wife. On her appeal to the Superior Court, she complained, (1) of the refusal of the court below to permit her to offer testimony as to her character for virtue and chastity; (2) of the refusal to allow her to show that her husband had been guilty of adultery during the time she lived with him as his wife, and (3) of the failure of the court to adequately instruct the jury on the law as stated in two points submitted by her. The assignments in support of her first and third complaints were overruled, but her contention that she ought to have been allowed to prove the adultery of her husband was sustained, and the decree reversed, with an order awarding a new trial. On this appeal by the libellant the appellee renews her three complaints, and the case, as she again presents it, is what it would have been if her appeal had been to us instead of to the Superior Court. Though not required to pass upon anything but the question raised by the appellant's assignments, we have considered those renewed before us by the appellee, and are of opinion that her assignments, dismissed by the Superior Court, ought not to have been sustained. We say this that she may know she was not wronged by its disposition of them.

The second assignment of error in the Superior Court raised the question of the correctness of the ruling of the trial judge that the wife, in view of her admission of her condonation of her husband's alleged adultery, could not set it up as a bar to his right to a divorce from her for the same cause. After it was stated in the opinion of the Superior Court that it must be assumed that the libellant had committed adultery, as set forth in the offer, the somewhat anomalous statement almost immediately follows, that all the members of that court were " of the opinion that the court erred in not admitting the evidence to sustain the offer giving rise to the assignment under discussion, and then it would be a question for the consideration of the trial judge whether the evidence was sufficient to go to the jury on the question of the commission of the crime of adultery by the husband during his marital relations with the respondent." The members of that court, however, did not agree as to whether the wife, assuming that the husband had committed adultery, could have condoned his offense. Under the offer brought before the court by the second assignment of error, it was bound

to assume that the proof would come up to the offer, and the question was squarely before it whether the wife could condone the offense of her husband so as to allow him to be divorced from her for the same offense committed by her subsequently to her condonation. That question, which is now before us, ought to have been decided by the Superior Court.

The witness by whom the adultery of the libellant was to be proved was the respondent herself. The offer was to prove that on or about September 10, 1901, when they were living together as husband and wife, he had committed that offense. This was more than two years before McDermott was caught in the house with her. After the offer had been made, in reply to a question put to her by the trial judge, she said, that after she knew from the condition of her husband's clothes that he had committed adultery, she continued to live with him as his wife for two years. What took place between the court and the witness was as follows : By Judge Ralston : " Q. When did you know of that? A. I know from the condition of his clothing. Q. When? A. The 10th of September. Q. The same night? A. Yes, sir. Q. And you lived with him as his wife after that? A. Yes, sir. Q. For two years? A. Yes, sir." This is all that appears in the record as to the husband's alleged infidelity and the wife's condonation of it. There was no offer to prove that after September 10, 1901, he ever was unfaithful, nor was there any offer to show anything that would bring the respondent within the cases holding that, under the particular circumstances surrounding her condonation, she ought not to be held strictly to it. We must pass upon the effect of her condonation in the light of what is before us, and it discloses nothing but a single offer to prove the adultery of the husband at or about a fixed date, coupled with an admission that the respondent had absolutely condoned it. Assuming that the proof would have sustained the offer, and that the jury would have found that the husband had committed adultery at the time stated, they would have been further compelled to find that the wife had unconditionally condoned it, for such was her admission. There was no offer to prove anything else, and the narrow question is whether the learned trial judge erred in not allowing the respondent to prove the adultery of her husband, in the face of her admission of her condonation of it, neither qual-

ified nor explained, and with no offer to qualify or explain it.

By section 7 of the act of March 13, 1815, 6 Sm. L. 286, it is declared : " In any action or suit commenced in the said court for a divorce for the cause of adultery, if the defendant shall allege and prove that the plaintiff has been guilty of the like crime ; or has admitted the defendant into conjugal society or embraces, after he or she knew of the criminal fact ; or that the said plaintiff (if the husband) allowed of the wife's prostitution, or received hire for them, or exposed his wife to lewd company, whereby she became insnared to the crime aforesaid, it shall be a good defense and a perpetual bar against the same." Under the provision that if a defendant shall allege and prove that the plaintiff has been guilty of the like crime of adultery, it shall be a good defense and a perpetual bar against a decree in divorce, the Superior Court could not agree as to whether the respondent could have condoned the offense so as to enable her husband to obtain a divorce from her for her subsequent adultery. There is no room for disagreement as to this.

The act does not declare that adultery cannot be condoned, but, on the contrary, expressly provides that its condonation shall be a good defense against the suit of the condoning husband or wife for a divorce from the sinning, but forgiven, respondent. A divorce cannot be procured by a libellant on the ground of the adultery of the respondent, if after he or she, knowing the fact, again takes the latter into conjugal society or embrace ; but if, after such society or embrace and forgiveness, the offense is repeated, without renewed forgiveness, the wronged husband or wife may ask that the marital bonds be sundered. After condonation the parties start de novo, and the forgiven one is not to be thereafter confronted with a forgiven sin as a bar to the right to be separated from the other for subsequent marital infidelity committed by him or her. " Condonation means the blotting out of the offense imputed, so as to restore the offending party to the same position he or she occupied before the offense was committed. The term ' forgiveness ' as it is commonly current in the English language, does not fully express the meaning of ' condonation.' A party may forgive in the sense of not meaning to bear ill will, or not seeking to punish, without at all meaning to restore to the original

position : " Keats v. Keats, 1 Sw. and Tr. 334. " Condonation restores equality before the law. If the injured party is willing to forgive the offense the law may well give full effect to that forgiveness, and not extend to such party the temptation, the encouragement, the license, to run through the whole calendar of matrimonial offenses without redress at the hands of the other party : " Cumming v. Cumming, 135 Mass. 386.

In Bronson v. Bronson, 7 Phila. 405, the late Chief Justice PAXSON, then on the lower court, in construing the act of 1815, clearly recognized the rule that by a condonation of the offense of adultery the parties start anew on their matrimonial career. And the law encourages condonation, for it tends to keep together husband and wife—often the parents of children—and to preserve the home, which otherwise might be broken up.

The words of the act of 1815 do not require the shocking construction that an erring husband, who has been forgiven by his wife and sins no more himself, can never be released from her if she subsequently becomes an adulteress. Such a construction would mean a license to her to bear a brood of bastards in his home, to be supported by him and to share his estate with the children of his own loins. Though the moral guilt of an adulterer is as great as that of an adulteress, he cannot bring spurious offspring into the home and impose them upon his wife as her children, but she can perpetrate this wrong upon him ; and it may be for this reason that the right of divorce so freely given to the husband in the Hebrew Scriptures was withheld from the wife, as it seems to have been among the Romans until the time of Julius Cæsar.

The decree of the Superior Court is reversed and that of the common pleas is affirmed.