Frank *v.* Frank, Appellant.

Argued May 2, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*J. M. Morrison,* and with him *Stanley H. Malone,* for appellant.

*Ralph H. Frank,* and with him *Bruce Harrison,* for appellee.

Opinion by Cunningham, J., July 10, 1930:

This is a libel in divorce, filed by Joseph Frank, charging adultery by his wife with one Max Schumann. The case was heard by the court below and the divorce granted. Respondent has appealed, alleging that the evidence was insufficient to sustain the decree and that, in any case, the offense was condoned.

The evidence need not be elaborated. Libellant testified to a series of clandestine meetings between his wife and the co-respondent over a number of years, which, together with an untrue explanation given by her as to her whereabouts on one particular night, aroused his suspicions and led him to hire two detec-

tives. The evidence of the latter showed that on January 26, 1929, the wife entered the car of the co-respondent near her home in Etna and drove with him to Pittsburgh. After dining at a restaurant, they drove to the place of one Bower in Etna and then together entered an apartment house, also belonging to Bower, and remained there two hours. They also reported that on February 2nd the parties made an identical trip, culminating in a visit, again of two hours, to the same house. On February 4th the detectives went to the Frank residence, where the respondent, after admitting her guilt, signed a statement to the effect that for the previous year she had indulged in adulterous relations with Schumann, meeting him nearly every Saturday night and occasionally on Wednesday night in his car or at the Bower apartment. This statement, it was testified, was prepared from her oral admissions. She was then taken to an alderman's office, where she signed an agreement giving libellant the general custody of their child, but allowing her to have it one day a week. While at the office she also signed the original statement a second time. Respondent's contention is that the confession is valueless because of fraud and coercion; her story is that, because of her husband's parting remark that morning, she supposed that the detectives were men who had come to examine the property in reference to a mortgage, and that she signed the paper believing it to be a mortgage application. As to the proceedings at the alderman's office, she signed the two papers, so she declared, because it was her only chance to see her child—otherwise, she was told she would be arrested and would not see it at all. The alderman, on the other hand, testified that before she put her name to the confession a second time (this was done in order to have it signed with her maiden name), he warned her not to sign unless it was true, and that she admitted it was correct. A police

officer who was present gave the same warning. As bearing on the question of coercion, it is worthy of note that there were present at the office not only Frank and his attorney, but also Schumann, Bower, and his wife, the alderman, and three other disinterested witnesses. Although the testimony was conflicting, the trial judge was not convinced that the confession was untrue, and neither are we. It is well-nigh impossible to believe that respondent did not know the seriousness of the charge she was admitting, and we cannot say as a matter of law that her written statement should have been excluded.

Respondent next contends that, even though the confession be accepted, it alone would not justify the granting of a divorce. But the confession does not stand alone and uncorroborated; nor does the case rest solely upon the testimony of the detectives. Respondent and Schumann, it is true, denied there was any unlawful intimacy between them, and offered a full explanation of the two visits to the Bower apartment, which it would serve no useful purpose to detail. The evidence on behalf of libellant, if believed, fully justified the finding of the court below upon this branch of the case.

The final question is that of condonation. The libel in this instance was filed before the effective date of the Divorce Law of May 2, 1929, P.L. 1237, section 52 of which provides, substantially, that condonation need not be specially pleaded but it shall be sufficient if the facts constituting that defense "appear in the evidence."

The applicable act is that of March 13, 1815, P.L. 150, section 7 of which provides: "In any action or suit........for a divorce for the cause of adultery, if the defendant shall allege and prove that the plaintiff ......has admitted the defendant into conjugal society, or embraces, after he or she knew of the criminal fact,

......it shall be a good defense and a perpetual bar against the same.'' The pertinent facts are these: An act of adultery was committed on January 26th; libellant was told of it by the detectives two days later; another act took place on February 2nd; libellant did not learn of this until February 4th, the day on which the parties separated. Respondent testified that she and her husband lived together as man and wife until the separation, and that they had sexual relations on February 3rd; libellant admitted that he occupied the common bed during that period, but said this was because there was no other, and denied the act of intercourse. We need not decide whether the failure to allege condonation precludes a consideration of this evidence, or whether, if condonation may be proved, the presumption of intercourse that arises from occupancy of the same bed is sufficient to establish it here, for we are reluctantly led to the conclusion that, under the language of the act, the adultery of February 2nd was not condoned. Granting that libellant condoned the adultery of January 26th by occupying the common bed after he learned of it, there is no proof that he knew of the later breach until after they had ceased to live together. Knowledge is an essential element of condonation (Gosser v. Gosser, 183 Pa. 499; 19 C. J. 84); it is expressly so made by the act. Moreover, the repetition of the offense after condonation revives the original offense: Talley v. Talley, 215 Pa. 281, 285; 19 C. J. 88. Libellant's actions reflect no credit upon him. However, upon a careful examination of the testimony we are unable to find any evidence that he admitted respondent ''into conjugal society, or embraces,'' after he had knowledge of her adulterous act on February 2nd; that act alone, in the absence of any evidence that it had been condoned, would support the decree.

The situation presented in Koch v. Koch, 62 Pa. Superior Ct. 607, is analogous to the present case.

This court there said, at page 612: "The master finds that the wife and her paramour had illicit relations after the middle of August; the court below agrees with this finding, and the servant's testimony conclusively shows that they continued their relations. If a single instance of this be shown, it of itself is an answer to her defense, unless the husband knew of the acts and condoned them as they arose."

Decree affirmed.