## Stoops v. Stoops

*Swope, Brown & Swope*, for libellant.
*Robert W. Geigley*, for respondent.

SHEELY, P. J., November 22, 1947.—This is a contested divorce action on a charge of adultery. The master filed a report recommending that the libel be

dismissed and libellant has filed exceptions to that report. The exceptions filed merely state that the recommendation of the master is against the law in the case and the report of the master is against the weight of the evidence. These exceptions are insufficient. Exceptions should be self-sustaining and should strike at specific findings of fact and conclusions of law: Spangler v. Spangler, 6 Somerset 314, 316 (1933), affd. 114 Pa. Superior Ct. 308 (1934) ; Hallman v. Hallman, 42 Montg. 173 (1926). However, it is our duty in all divorce cases to consider the evidence and to make our findings de novo: Rinoldo v. Rinoldo, 125 Pa. Superior Ct. 323, 326 (1937).

The case is divided into two phases. The first has to do with the trip made to Norfolk, Va., by respondent and corespondent, and the second has to do with the alleged confession made by respondent. At the original hearing the son of the parties testified that while he was stationed at Norfolk respondent and corespondent came there to see him. Two rooms were secured at a hotel, respondent occupying one and corespondent and the son occupying the other. About 4 a.m. corespondent left the son's room and went to the room of respondent where he remained until the son arose about 8 a.m. This testimony, standing alone, would have been sufficient evidence of the charge of adultery as it is difficult to assign an innocent motive for a man going to the hotel room of a married woman at that time of day and remaining for four hours: Kerr v. Kerr, 134 App. Div. 131, 118 N. Y. Supp. 801 (1909) ; 1 Freedman 491.

However, libellant did not stop there but in addition to that testimony offered a statement made by respondent to the State police, who investigated the circumstances of the Norfolk trip with a view to a possible perjury charge after respondent and corespondent had denied, and the son had affirmed, the trip in a previous support action. In that statement she said that she and

corespondent and her son were together in Norfolk that evening. Corespondent and the son drank some beer which caused an argument and both respondent and corespondent became angry. She went to her room about midnight and remained there until she was joined by corespondent and her son about 8 a.m. She specifically denied any improper conduct. In her testimony after the report was referred back to the master she repeated this explanation.

Thus we have a situation where libellant has offered proof of facts sufficient to make out his case but has also offered in evidence a statement by respondent which fully explains and contradicts those facts. Where a party offers a writing made by the other party containing admissions against his interest and also self-serving declarations he is not bound by the self-serving declarations but may introduce evidence to disprove them, and the evidence as a whole is for the trier of the facts: Heyman v. Hanauer, 302 Pa. 56, 62 (1930). Libellant has offered no evidence to disprove the statements of respondent except the testimony of the son. Considering the improbability that corespondent would leave the room of the son and go to the adjoining room of the mother to spend the night, and the probability of the explanation given by respondent in her statement to the police and in her later testimony, libellant has failed to sustain the burden upon him of clearly proving this part of the charge: Pierpoint v. Pierpoint, 108 Pa. Superior Ct. 108, 110 (1933).

The second phase of the case has to do with the alleged confession of adultery made by respondent to the State police at the time they questioned her about the Norfolk trip. They then asked her generally about her relations with corespondent and she admitted having sexual relations with him on more than one occasion and stated that nearly all of these acts took place in corespondent's automobile parked on the James Bigham farm about one-half mile from her home and

that they occurred when they went to respondent's home or her sister's home in Waynesboro.

At the original hearing this alleged confession was not corroborated in any way. It is well settled in Pennsylvania that confession of adultery uncorroborated by circumstances is insufficient because otherwise "the conjugal tie would become most insecure, for either party could talk it loose, or a convenient witness would never be wanting to sunder it by his oath": Richards v. Richards, 26 Dist. R. 595 (1917); Matchin v. Matchin, 6 Pa. 332, 337 (1847). After the record was returned to the master libellant offered additional testimony in an effort to corroborate the confession. James Bigham testified that on two or three occasions he saw respondent and corespondent in corespondent's automobile driving along a public road adjacent to his farm. On one occasion respondent pulled her hat down over her face as they passed him. Samuel McNair gave similar testimony of having seen them together on two occasions and of respondent pulling her hat over her face. Rev. Charles Coffelt saw the parties together in the automobile on September 6, 1945, along the road from the Stoops farm to the Fairfield Road. Donald S. Weikert saw them together in the car one evening just before dark as the car turned into an unimproved road leading from the Taneytown road.

This testimony does not corroborate the confession in the slightest degree except to show that the parties were together and that they were on the road leading past the Bigham farm. All of the incidents referred to occurred in broad daylight and are fully explained by respondent. According to her testimony, which is not denied by libellant, corespondent frequently took her to visit a doctor in Maryland and to her home in Waynesboro. This was with libellant's full knowledge and approval, and on a number of occasions he accompanied them to Waynesboro. Under these circumstances we could not accept testimony that the parties

were merely together in the automobile as evidence in corroboration of a confession of adultery. There was nothing to show any improper conduct on their part or any adulterous inclination. The only suspicious circumstances was the testimony that respondent pulled her hat over her face, but at best this is merely suspicion.

There was also testimony by James Bigham and Samuel McNair that they saw corespondent's car on a number of occasions parked on a vacated woods road on the Bigham property about 10 or 15 feet off the public road, and that on many occasions this was at night—as late as midnight or later. This testimony would tend directly to corroborate the confession which stated that the acts occurred in the automobile parked on the Bigham farm except for one very important detail. Neither of the witnesses ever saw respondent about the car when it was parked and none of the times they saw it parked coincided with the times they saw the parties together on the road. Assuming that they were correct in their identification of corespondent's car, respondent could not be convicted of adultery merely because his car was seen parked where she said the acts took place.

Libellant relies upon the case of Frank v. Frank, 99 Pa. Superior Ct. 183 (1930), but in that case the confession was amply corroborated. There was testimony that respondent and corespondent had a number of clandestine meetings over a period of years and that respondent gave untrue explanations of her whereabouts on one particular night. On two occasions the parties dined together and then entered an apartment house where they remained for two hours. Respondent and corespondent admitted these visits and sought to explain them but the court did not accept the explanations. In the present case there is no testimony placing the parties together under suspicious circumstances or to show any adulterous inclination on their part, and

respondent and corespondent deny any improper conduct.

We agree with the master who carefully analyzed the testimony and the applicable rules of law that the charge of adultery contained in the libel is not established by clear and satisfactory evidence: Bobst v. Bobst, 160 Pa. Superior Ct. 340 (1947).

And now, November 22, 1947, the report of the master in the above case is approved and the libel is dismissed at the cost of libellant.