## Holobinko v. Holobinko

540

*D. Edward Long*, for plaintiff.

WINGERD, P. J., January 13, 1950.—The disposition of this case has been delayed a long time. After oral argument an additional brief was to be filed by libellant and the matter was laid aside awaiting it. No additional brief was forthcoming, and sometime ago the court was informed that the brief would not be filed.

The ground upon which this proceeding in divorce was brought is adultery. The facts presented before the master are in short as follows: Libellant at the time of marriage was in the armed services. He and respondent lived together a short time. After several years in the service libellant returned to the house in which he and respondent had been living together after their marriage. Respondent's mother seems to have been living with respondent at that place, and when libellant asked for respondent, her mother stated she was upstairs. Libellant went upstairs and found respondent lying on the bed with a young child. Libellant asked whose child it was, and she stated that it was her child. Libellant then left the home and never returned and has never lived with respondent since that time. Libellant testified that he had been overseas a large part of the time when in the service, and it appeared from his testimony that during the time the child must have been conceived he was overseas. Libellant also testified that he had never seen his wife or been with her from the time he left her in June 1942 until he returned to their home on August 24, 1945. He also offered in evidence his discharge from the service on which was noted the period during which

he was overseas, from July 1943 until July 1945. The child was born on July 9, 1945, at the home of respondent's sister on Route 3, Mercersburg, Franklin County, Pa. Respondent's mother testified respondent told her that Kenneth Hornbaker was the father of the child. She also testified that Kenneth Hornbaker was living in the same house with respondent. She further testified that libellant was not around or near the place at which her daughter was living at the time of the conception of the child. Respondent's brother testified that he often went to his mother's, which was the place where respondent was living, and that he saw Kenneth Hornbaker there and further that Kenneth Hornbaker and respondent and his mother came down to his home. He also testified that he heard his sister say that Kenneth Hornbaker was the father of the child. The physician who attended the respondent during her pregnancy and delivery stated the child was delivered on July 9, 1945, and that, while the respondent was in labor she stated that Kenneth Hornbaker was the father of the child.

The testimony of the father as to nonaccess and his wife's statement to him that the child was hers was taken by the master's subject to be stricken out. The discharge was admitted by the master and considered by him in reaching his final conclusion.

The master found that respondent had committed adultery but did not find that she had committed it with any particular person. The suggested decree submitted to the court did not contain the ordinary provision of a decree in adultery prohibiting the respondent and corespondent to marry. The basis of the master's finding of adultery was that respondent had been delivered of a child and that the discharge of libellant showed that he had been overseas at the time the child must have been conceived. He then further in his opinion came to the conclusion that the testimony of

libellant as to nonaccess and of respondent as to paternity of the child were both admissible and not rendered inadmissible by the general rule that neither parent can bastardize a child born during wedlock on the basis that this rule does not apply in a divorce proceeding where the issue is adultery and not the legitimacy of a child. He also refers to The Divorce Law of May 2, 1929, P. L. 1237, 23 PS §50, making the libellant in a divorce proceeding fully competent to prove all facts and concludes that under that act the testimony of libellant as to nonaccess was admissible.

Although there is no appellate court decision in Pennsylvania definitely holding that, in a divorce proceeding on the ground of adultery where the wife has given birth to a child, the testimony of a husband as to nonaccess during the time the child must have been conceived or the testimony of the wife that the husband is not the father of the child is not admissible, there are some lower court cases which hold that it is not admissible, such as Williams v. Williams, 46 D. & C. 481; Peters v. Peters, 4 D. & C. 287; Coyles v. Coyles, 26 Dist. R. 816; and Moore v. Moore, 49 Montg. 130: and on the other hand there are some which hold that it is, such as Weaver v. Weaver, 31 Dauph. 326; Thompson v. Thompson, 28 Dauph. 73; and Allison v. Allison, 61 Pitts. L. J. 101. The latter cases are based largely on the fact that the above-mentioned statute definitely allows libellant to testify as to all facts.

The general rule in Pennsylvania is stated in Commonwealth v. DiMatteo, 124 Pa. Superior Ct. 277, 281, by Judge Cunningham, who, quoting from Dennison v. Page, 29 Pa. 420, states

" 'Non-access cannot be proved by either the husband or the wife, whether the action be civil or criminal, or whether the proceeding is one of settlement or bastardy, or to recover property claimed as heir at law.' " and

also says, pp. 283, 284: "Under the rule in force in England, in this state, and in at least eighteen sister states, the prosecutrix was not, as we have seen, a competent witness to prove non-access of her husband. . . .

"No matter what diversity of opinion may prevail in other jurisdictions, neither a trial court, nor this court, may weaken the force of the rule on account of the difficulties sometimes attendant upon an effort to secure competent evidence rebutting the presumption of legitimacy. Nor does the Act of May 23, 1887, P. L. 158, as amended by the Acts of April 27, 1909, P. L. 179, and May 11, 1911, P. L. 269, 19 PS §683, relating to the competency of husband and wife to testify against each other in certain criminal proceedings, modify it in any way."

The above rule of law has been applied to exclude as inadmissible the declaration of a married woman made at the time of the birth of her child, being conscious of approaching death, as to who is the father of the child (Commonwealth v. Reed, 5 Phila. 528), although such a declaration when made by a single woman is ordinarily admitted in cases charging fornication and bastardy: Pennsylvania Trial Evidence, Henry, 3rd ed. sec. 286.

It will be noticed that in the case of Commonwealth v. DiMatteo, 124 Pa. Superior Ct. 277, the court held that the act relating to the competency of husband and wife to testify against each other in criminal proceedings did not modify the general rule that neither could give testimony of the nonaccess of the husband. When we consider this statement in relation to The Divorce Law of May 2, 1929, P. L. 1237, 23 PS §50, supra, which makes libellant in a divorce proceeding competent to prove all facts, we are inclined to feel that the cases holding that this act does not permit a husband, libellant, to testify to nonaccess in a divorce

proceeding based upon adultery are more safe to follow than those holding otherwise.

We realize fully that the cases of the appellate courts, holding that the testimony of either husband or wife bastardizing a child born during wedlock is inadmissible, are cases in which the legitimacy of the child was the main issue and were not actions for divorce based on adultery. In the instant case the issue is the adulterous act and not the legitimacy of the child. If the effect of the testimony of a husband or wife is of such a character that it does not necessarily bastardize a child born to the wife during wedlock but is effective only to prove an adulterous act, there seems no good reason for holding it inadmissible. If a child is born to a wife during wedlock and the husband testifies to nonaccess during the period when the child must have been conceived, the result of such a statement, if believed, is definitely that the child is illegitimate. On the other hand, in the same case, if the wife testified that the child is not her husband's or that the father of the child is a man other than her husband, such testimony does not necessarily bastardize the child, but does definitely amount to a confession of adultery by the wife. Such testimony by a wife is entirely different than testimony of nonaccess by the husband or testimony of nonaccess by the wife. It is entirely possible from a physiological standpoint that the wife may well be mistaken in the father of the child, but she cannot be mistaken in reference to her own act of adultery. The statement by the wife, excluding its effect as to the nonaccess of the husband, assuming that the husband had access, and disregarding it as having any probative value in reference to the legitimacy of the child, still constitutes a confession of adultery. If it is a confession of adultery then we come to the second question, namely that a confession of adultery is not sufficient upon which to base a decree in divorce on that ground unless there are cor-

roborating circumstances: Eshbach v. Eshbach, 23 Pa. 343, 345; Randolph v. Randolph, 59 Pa. Superior Ct. 377, 378; Morse v. Morse, 81 Pa. Superior Ct. 602, 603; and Matchin v. Matchin, 6 Pa. 332. However, where the confession is adequately corroborated a divorce may be granted: Matchin v. Matchin, 6 Pa. 332; Frank v. Frank, 99 Pa. Superior Ct. 183; and Staiger v. Staiger, 46 Pa. C. C. 171.

To the mind of this court the circumstances that the person with whom the wife confessed she committed adultery was at the home of the wife, continued to live in that home after the child was born, and accompanied the mother and the wife on visits to her brother's home, during the time libellant was in the armed service and was, according to the testimony of respondent's mother, away from home, are sufficient to corroborate the confession of libellant.

We feel that the testimony of the wife is admissible as a confession of adultery but not admissible as evidence bearing upon the legitimacy of the child born to her July 9, 1945, and that such confession is sufficiently corroborated by facts and circumstances to justify granting a divorce on the ground that respondent committed adultery with one Kenneth Hornbaker.

Libellant's discharge is undoubtedly proper evidence of service in the United States Army and a discharge therefrom, but there is considerable doubt as to whether it is admissible in evidence to prove as facts the notations as to the character and place of service set forth in it. It was not shown that such notations were transcripts of a governmental record. Their source was not disclosed. They may well have been placed upon the discharge, on libellant's separation, from statements made by libellant himself. It has been held that a discharge from military service is not admissible to prove the height and other personal description of the person named therein from the notations concerning

those matters in the discharge: Commonwealth v. Crowley, 26 Pa. Superior Ct. 124, 129, 130. As we feel that there is sufficient evidence to grant a divorce in the instant case without libellant's discharge from the service or libellant's own testimony as to nonaccess, the question of their admissibility is unimportant and we do not decide it.

We find as a fact that respondent committed adultery with one Kenneth Hornbaker, and therefore, libellant should be granted a divorce a. v. m.

Now, January 13, 1950, a decree shall be entered divorcing libellant, Charles W. Holobinko, from respondent, Lucretia Catherine Holobinko, absolutely and prohibiting respondent, Lucretia Catherine Holobinko, from marrying corespondent, Kenneth Hornbaker, during the lifetime of libellant, Charles W. Holobinko.