Dulsky v. Susquehanna Collieries Co., Appellant.

Argued December 11, 1934.

Before TREXLER, P. J., KELLER, CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*T. G. Wadzinski,* and with him *Henry A. Gordon,*
for appellant.

*Roger J. Dever,* for appellee.

OPINION BY CUNNINGHAM, J., February 1, 1935:
As the result of an accident in the course of his em-

ployment as a miner with the defendant company, the death of William Dulsky occurred on May 24, 1927. Nearly a year later the claimant filed her petition for compensation as his widow; no mention was made therein of the existence of any children of the deceased employe. It soon developed at the hearing before the referee that claimant was neither living with the decedent, nor dependent upon him, at the time of his death. Claimant was then permitted to modify the proceeding into a claim by her in behalf of four of her children. Her claim as widow was disallowed and no appeal taken from that action.

This appeal is by the employer from a judgment entered by the court below upon an award to four children born to claimant, and the basis for the appeal is that they are not the children of William Dulsky.

The question involved, therefore, is whether the circumstances shown by the credible evidence were sufficient to rebut the legal presumption of legitimacy.

During the last seven years this case has traveled back and forth between different referees, compensation boards and judges of the court below, until the merits have become so obscured by conflicting findings and differing conclusions of law that an historical resume seems to be unavoidable.

William Dulsky was married to claimant, then Elizabeth Kendrick, a widow, on June 14, 1919, at Girardsville, Schuylkill County. By September 28th of that year the parties had separated and never lived together again. Dulsky went to live at the boarding house of a Mrs. Norkunskie, with whom he had previously boarded, at Shaft, Pa. At the time of his death Dulsky was living at this house and his wife at that time was, and since about May, 1920, had been, living at the home of and with one Michael Salaway, alias, Nick Solway, at 29 East Spruce Street, Mahanoy City.

While living with Solway four children were born to her—Irene, on November 29, 1921 (more than two years after her separation from her husband); Joseph, on December 11, 1923; William, on January 7, 1925; and Anthony, on May 13, 1927. These children are the beneficiaries of the award upon which the judgment was entered.

After several hearings before a referee between June 29, 1928, and March 13, 1929, he found in his fourth finding the facts to which we have already referred, and also made a finding to the effect that Dulsky visited claimant "from time to time and remained overnight frequently." One of his conclusions of law was that the children were entitled to compensation under the provisions of the Workmen's Compensation Act of June 2, 1915, P. L. 736, and the amendment of April 13, 1927, P. L. 186, fixing the amount of compensation distributable to children of a deceased employe where there is no widow entitled to compensation. The aggregate amount of the awards to their guardian, made under date of April 27, 1929, is $6,616.43.

Averring that the referee erred in concluding, inter alia, that the beneficiaries were the children of Dulsky, the employer appealed to the board. In an opinion dated September 11, 1929, the board dismissed the appeal and affirmed the findings of fact, conclusions of law and the award of the referee.

From this disposition of its appeal by the board, the employer appealed to the Common Pleas of Schuylkill County. Prior to the argument, however, it presented to the board a petition for a rehearing, upon the ground of after discovered evidence, which was granted.

On July 17, 1930, the matter came on for a rehearing before the referee, who stated he found nothing in the additional testimony to cause him to change his

prior findings, and accordingly reaffirmed those findings and the award based thereon.

The employer again appealed to the board, excepting particularly to the finding of the referee that the beneficiaries are the children of the decedent, and averring that such finding "is unwarranted by the credible evidence in the case." Complaint was also made that the referee did not exhibit in his report "any subordinate underlying findings of fact which justify the ultimate conclusions of fact and law" made by him.

In an opinion filed January 23, 1931, the board again affirmed the award. In the course of its opinion, the board found: "The evidence to the effect that the children are not in fact the children of William Dulsky is very persuasive" and "It is quite apparent that [claimant] lived in adultery with [Nick Solway]." It also found that the testimony of claimant and her witnesses, to the effect that Dulsky visited her from time to time and remained overnight with her, "is not worthy of credit."

It was an exclusive function of the board to pass upon the credibility of the witnesses. But, notwithstanding the foregoing conclusion and its subsequent statement that the evidence proved to its entire satisfaction that at least three of the children "are not the children of the decedent", it affirmed the fourth finding of the referee that all four are his children.

The position taken by the board seems to have been that the presumption of legitimacy, coupled with the admitted fact that the parties lived within eight miles of each other, prevented it from disposing of the case in accordance with what it was convinced is the truth.

Thereupon the employer appealed to the court below. That tribunal, by a divided court, sustained the employer's exceptions and remitted the record to the board "for further consideration and action." The

majority opinion was written by KOCH, P. J. After correctly stating that the question involved upon the appeal was whether the evidence and the law support the finding that William Dulsky was the father of the four children, he summarized the facts appearing from the evidence so clearly and discussed the applicable authorities so fully that we quote liberally from his opinion.

"When a married woman gives birth to a child the presumption of its legitimacy arises. But the presumption may be overcome by proof of circumstances that will satisfy a jury to the contrary.

" 'In old times it seems to have been holden that a child born of a married woman whose husband was within the four seas which bound the Kingdom could not be considered as illegitimate. This was unreasonable. When a husband had access to his wife it is right that no evidence short of absolute impotence of the husband should bastardize the issue. But where they live at a distance from each other so that access is very improbable, the legitimacy of the child should be decided upon a consideration of all circumstances': Commonwealth v. Shepherd, 6 Binney, 283, 286.

" 'Where a child is begotten and born whilst its mother is a married woman, its legitimacy is presumed until the contrary is clearly made to appear. This presumption can be removed by showing that the husband had no sexual intercourse with his wife at any time when it was possible for the child to have been begotten': Dennison v. Page, 29 Pa. 420, 422.

"Again: 'The old rule, that the presumption of legitimacy could not be overcome by any proof less than the absence of the husband beyond seas, previous to and during the whole time of gestation no longer exists. The modern rule is, that where the evidence plainly shows such non-access on the part of the husband, that he could not, in the course of nature, have

been the father of the child, it is sufficient to destroy its legitimacy. But nothing short of this will bastardize one born in wedlock: Rex v. Luffe, 8 East 193; Foxcroft's case, 1 Roll's Ab. 359; Stigall v. Stigall, 2 Beach 256'; Dennison v. Page, supra.

"Surely, when husband and wife continue to live eight miles apart, the husband cannot, in the course of nature, be the father of his wife's children. 'And there is authority that a man and wife may dwell in the same place, and in the same house, and yet under circumstances such as, instead of proving, tend to disprove, that any sexual intercourse took place between them': 3 R. C. L. 722 (Wright v. Hicks, 12 Ga. 155). 'Children born within lawful wedlock are bastards, if the fruit not of the marriage but of adulterous intercourse': 3 R. C. L. 722. 'Proof of adultery is not, however, alone sufficient to rebut the presumption of legitimacy arising from the birth of a child in wedlock': 3 R. C. L. 739.

"In this proceeding we must not overlook the fact that it is civil and not criminal in its nature, and that bastardy need not be proved beyond all reasonable doubt. Proof of the fact of bastardy by the fair preponderance of the credible evidence is, in our opinion, sufficient. ...... It seems to us that this record has abundant proof to show non-access on the part of the husband. The findings of fact by the board and the evidence in the case is clearly sufficient to establish the illegitimacy of all of the children. Let us bring together the facts found by the board and the evidence in the record tending to clearly prove the illegitimacy of the children.

"William Dulsky and Elizabeth Dulsky married June 14, 1919; lived together until only September 28, 1919, and then separated and never lived together again; she prosecuted him for non-support one month after the separation and her case was dismissed by the court

after hearing had; Dulsky died May 24, 1927; in the meantime his wife gave birth to the four children named in the award, the first whereof was born more than two years after the separation, and Mrs. Dulsky also gave birth to another child about two years after her husband's death. Who was its father? And what suspicion does that fact cast upon the fatherhood of the other four children? There is no evidence that Mrs. Dulsky ever prosecuted her husband for the support of any one or all of said four children. If they were his why did she not prosecute him? She lived with Nick Solway or Nick Solway lived with her before she married Dulsky; and, as early as 1 April, 1922, she and Solway purchased the property where they lived in Mahanoy City and took the title to the property in the name of Nick Solway and Elizabeth Solway, his wife, and promptly recorded the deed. The receipt in the deed says the consideration of $2,350 was received from Nick Solway and Elizabeth Solway, his wife. And within three months thereafter, to wit, June 27, 1922, they signed, sealed and delivered as Nick Solway and Elizabeth Solway, his wife, to the Merchants Banking Trust Company of Mahanoy City, a mortgage for $6,400 on the premises described in the deed, said mortgage being made to secure the payment of $3,200 and lawful interest at the expiration of one year from the date of the mortgage. Nick Solway signed the mortgage by his name and Elizabeth Solway signed it by her mark. The same was witnessed by J. H. Garrahan, now deceased, and R. L. Heiser. Garrahan was the attorney for the bank. He was well known to the writer hereof who will here assert that the local bar has had no more reputable lawyer in the last fifty years. He was too honest and honorable to be a false witness to such an instrument. Elizabeth Dulsky and Nick Solway were both unquestionably identified as the parties who gave the said mortgage

to the bank. Elizabeth denied that she is the person who signed the mortgage, but it was shown that she frequently made payments thereon to the mortgagee. ......

"William Dulsky, for whose benefit an award of compensation has been made, was born January 7, 1925, and was baptised January 17, 1925, as the child of Nick and Elizabeth Solway. Although Elizabeth Dulsky made a claim as the dependent widow of Dulsky the referee found that Dulsky had not supported her after September 28, 1919, so he awarded her nothing and the board affirmed his action. ......"

After referring to the statement of the board that the testimony of claimant and her witnesses relative to visits from Dulsky "is not worthy of credit" the opinion continued: "In other words, the board does not believe that testimony, and yet they affirmed the referee's finding (4) in which he says, 'He did visit her from time to time and remained overnight frequently.' We believe that was a mere inadvertence on the part of the board. Our careful perusal of all the evidence convinces us that the evidence respecting this particular matter is utterly false. The evidence of the woman with whom Dulsky boarded at Shaft, eight miles from Mahanoy City, is that Dulsky never went to Mrs. Dulsky's after their separation. Evidence is entirely lacking to show that Mrs. Dulsky ever prosecuted Dulsky for the support of any or all of said four children. Nor did she make any claim for them until after it was learned before the referee that she had the children. Nor did she file a claim even for herself until almost a year after Dulsky's death. ...... She testified that Solway boarded with her when she married Dulsky, and boarded with her before she moved into his house. (The house was bought 1 April, 1922). There is evidence that the insurance on the house was in the names of Nick and Elizabeth Solway.

"Thomas Price, a witness for defendant, investigated this case and testified, without objection, that Mrs. Solway told him she had one child going to school. He visited the school and found the name of the child registered as Irene Solway. This is the oldest of the four children. ...... We answer the question by saying that the board may and should find according to its conviction irrespective of the presumption of legitimacy. The evidence is ample here to rebut the presumption of legitimacy as to each and all of the four children. The board, after finding a fact contrary to that of the referee, should not affirm the contrary of the referee. The board should modify the referee's fourth findings of fact so as to make them conform with their own findings. Where man and wife 'live at a distance from each other so that access is very improbable the legitimacy of the child should be decided upon a consideration of all the circumstances': Commonwealth v. Shepherd, supra. The board could, therefore, 'upon consideration of all circumstances' very easily find illegitimacy here without doing any violence to the presumption of legitimacy."

To this summary of the facts we may add that when John, another son of claimant, was admitted to a hospital for a surgical operation which terminated fatally in 1928, Nick Solway, as shown by the hospital records, stated he was the boy's father, and as such signed the authority for the operation, and gave the information for the death certificate, etc.

For a number of years claimant's name has appeared on tax duplicates as "Mrs. Elizabeth Salovey," and she was known in the neighborhood by that name.

When the record was returned to the board it was sent to a new referee. This official, without taking any additional testimony and without paying any attention to the opinion of the court, substantially adopted the findings of the first referee and, under date of March

13, 1933, entered the same award to the children. His conception of "access" seems to be based entirely upon a matter of mileage, regardless of all the other matters pointed out by the court. To the fourth finding of the first referee he added: "Claimant and the decedent lived within a distance of eight miles of each other, and *therefore* had access to each other."

By this time the personnel of the board had changed. The new board, upon the appeal of the employer, adopted the views of the court, reversed the findings and conclusions of the referee, substituted its own, and disallowed the claim on behalf of the children upon the ground that they "are not the children of the decedent, and received no support from him during his lifetime."

Claimant then appealed to the court below, of which Judge KOCH was no longer a member, and in an opinion written for the court by HOUCK, J., (who had dissented from the previous opinion) it was held that the action of the last board must be reversed and judgment entered upon the award because "there is no proof of the husband's impotence and no proof of non-access."

We cannot agree with this disposition of the case. The question of access was one of fact for consideration and disposition by the board. Neither board believed the testimony of claimant and her witnesses showing access. There was the positive testimony of Mrs. Norkunskie, with whom decedent boarded from the date of the separation until his death, that he never went, during that period, to Mahanoy City. This witness arranged for the interment, paid for the grave and for the services of the priest; claimant did not attend the funeral.

The board was charged with the duty of weighing the testimony and passing upon the credibility of the witnesses. It had a right to accept the testimony of

Mrs. Norkunskie and reject that of claimant and her witnesses. It found as a fact that decedent did not "visit with, live with, or cohabit with his wife" after the separation. As there was competent evidence to support that finding, no court may disturb it.

Moreover, a finding of non-access in this case is in harmony with all the credible testimony. An attentive reading of all the evidence demonstrates that this claimant never even thought of suggesting to any one, during his lifetime, that Dulsky was the father of these four children. Even after his death, she made no such assertion until she had learned that she could not obtain compensation for herself.

The position taken by the court below and by counsel for claimant is that the presumption of legitimacy stands in this case until the negative proposition of non-access has been *absolutely* proven.

This is not the modern rule. The presumption only stands until met with such evidence as makes it appear clearly and to the satisfaction of the fact finding body that sexual intercourse did not take place between the husband and wife at any time when he could have been the father of the child or children. Cf. Com. ex rel. Moska v. Moska, 107 Pa. Superior Ct. 72, 76, 162 A. 343.

In addition to the cases cited by Judge KOCH, reference may profitably be made to the opinion of Judge CARDOZO, now Associate Justice CARDOZO of the Supreme Court of the United States, In re Findlay, 170 N. E. 471; 253 N. Y. 1, from which we quote the following: "Upbringing and belief must yield, we are told, to the presumption of legitimacy. ...... Potent, indeed, the presumption is one of the strongest and most persuasive known to the law ...... and yet subject to the sway of reason. Time was, the books tell us, when its rank was even higher. If a husband, not physically incapable, was within the four seas of Eng-

land during the period of gestation, the court would not listen to evidence casting doubt on his paternity. The presumption in such circumstances was said to be conclusive. ...... The rule of the four seas was exploded by the judgment in Pendrell v. Pendrell, 2 Strange 925, decided in 1732. It was exploded ...... 'on account of its absolute nonsense.' Since then the presumption of legitimacy, like other presumptions, such as those of regularity and innocence, has been subject to be rebutted, though there have been varying statements of the cogency of the evidence sufficient to repel it. At times the cases seemed to say that any possibility of access, no matter how violently improbable, would leave the presumption active as against neutralizing proof. ...... A formula so inexorable has yielded with the years to one more natural and supple. ...... By and large, none the less, the courts are generally agreed that countervailing evidence may shatter the presumption though the possibility of access is not susceptible of exclusion to the point of utter demonstration. ...... They will not be held legitimate by a sacrifice of probabilities in a futile quest for certainty.''

Upon consideration of the entire record we are of opinion that the employer's assignments of error must be sustained.

Judgment reversed and here entered for appellant.