Commonwealth v. DiMatteo, Appellant.

Argued October 26, 1936.

278

Before KEL-
LER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER,
JAMES and RHODES, JJ.

*Mathues Dougherty,* with him *Elgin E. Weest,* for appellant.

*Louis A. Bloom,* Assistant District Attorney, with him *William B. McClenachan, Jr.,* District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., December 11, 1936:

The question involved upon this appeal, as phrased by the representatives of the Commonwealth, reads: "May a defendant be convicted in a prosecution for fornication and bastardy and failure to support an illegitimate child upon the sole testimony of a prosecutrix, a married woman, who testified that she had sexual intercourse with the defendant as a result of which a child was born unto her; that she has been separated from her husband for a period of three and one-half years, during which time she has not seen her husband or had any sexual relations with him?" The answer is No—because the prosecutrix was not competent to testify to non-access by her husband.

For more than a century it has been the law of this

state that a man may be convicted of the misdemeanor of having begotten a bastard child upon the body of a married woman, provided the Commonwealth has rebutted the presumption of legitimacy by competent proof, beyond a reasonable doubt, of non-access by the woman's husband. For the same length of time it has been the law that a wife, whose husband is living and undivorced, may not be permitted to testify to his non-access and thereby bastardize her child.

The leading case is *Commonwealth v. Shepherd*, 6 Binney, 283. There, as here, it was contended that as Sarah Myers, the prosecutrix in that case, was a married woman she was incompetent to testify either to the fact that her child had been begotten by Shepherd, the defendant, or to the fact of non-access by her husband during the period within which the child must have been begotten. In disposing of the first contention, TILGHMAN, C. J., said:

"The first objection is founded upon a supposition, that her evidence was received under our act of assembly, which provides, that a man may be convicted of bastardy on the oath of the mother of the child, *being a single woman*. My brother YEATES, before whom the cause was tried, mentions the case of Doctor M'Clean, against whom a married woman was admitted as a witness after full argument, and the law as he conceives has been so taken ever since. M'Clean's case was before my memory, but I have no doubt of its being decided on correct principles; because, throwing the act of assembly out of the question, the woman would be a competent witness from the *necessity* of the case, upon *common law principles*. I do not mean that she would be a witness to all purposes, but only as far as the necessity extends, that is to prove the *criminal connection*. Further than that she ought not to go; because everything else is capable of proof by other persons, and nothing but necessity will warrant the dispensing with the rule, that a woman shall not

be a witness in a matter wherein her husband is concerned; and here he is very much concerned, both in property, (for he is bound to maintain the child if it be legitimate) and in character."

The second contention in the Shepherd case related to the competency of the prosecuting witness to testify to non-access and arose in this way. Her direct examination did not disclose she was married. On cross-examination it developed that she had been married for about eleven years. Counsel for the Commonwealth then asked her when she last saw her husband. Over the objection of counsel for the defendant, she was permitted to answer she had not seen him for eight years. There was testimony from other witnesses that her husband had not been known to have been in her company for approximately seven years prior to the birth of the child.

The trial judge charged the jury "that if, upon a consideration of all the evidence, they should be of opinion that the husband had not had access to his wife, and that the child was really begotten by the defendant, they might find him guilty of both fornication and bastardy; *but that they were not to consider anything which fell from Sarah Myers as evidence of non-access.*" (Italics supplied) This instruction was approved by the Supreme Court, particularly in view of the explicit direction that they were not to consider anything testified to by the prosecutrix as proof of non-access.

The Shepherd case was followed by *Dennison v. Page,* 29 Pa. 420. The latter was a partition proceeding in which one Mary Dennison claimed to be a legitimate child of Samuel Page and therefore a proper party to the proceedings. At the trial of a feigned issue, the defendant therein offered to prove by Mrs. Page, the mother of Mary Dennison and widow of Samuel Page, that Mary Dennison had been begotten before, and born

about three months after, her marriage with Page, "and that he was not her father, but that a man by the name of Rust was." The objection to the admission of this testimony was sustained. On appeal our Supreme Court said:

"The question before the jury was, whether or not Samuel Page was the father of Mrs. Dennison? That he was her father, his marriage with her mother before her birth clearly establishes, in the absence of proof of non-access. The proffered testimony, in substance though not in form, was to prove non-access.

"That the mother was incompetent to prove this, is perfectly well settled by abundant and uniform authority. Non-access cannot be proved by either the husband or the wife, whether the action be civil or criminal, or whether the proceeding is one of settlement or bastardy, or to recover property claimed as heir at law.

"I will mention some of the numerous cases where the question has been decided. In *Rex v. Rook,* 1 Wilson 340, which was a bastardy case, it was held that the wife could not be a witness to prove non-access. The same point had been previously decided in *Rex v. Inhabitants of Reading,* Hardwicke Cases 79; *Rex v. Luffe,* 8 East 193, was also a bastardy case, and there Lord Ellenborough said that the rule which forbade the wife to prove non-access 'was founded upon a principle of public policy which prohibits the wife from being examined against her husband, in any matter affecting his interest or character.' "

When these established principles are applied to the record in the case now at bar it is clear that the conviction must be reversed and a new trial directed. Here, the sole witness called by the Commonwealth was May Moore, the prosecutrix. After she had testified the appellant, Paul DiMatteo, had sexual intercourse with her on numerous occasions between April and August, 1935, and was the father of her male child,

born March 13, 1936, the Commonwealth had her testify she was a married woman during the period of her intimacy with appellant. When the district attorney asked her how long she had been separated from her husband, counsel for appellant objected to her competency to answer that question. His objection was overruled and an exception granted. The answer of the witness was, "I should say three and a half years." This further examination of the prosecutrix was permitted. "Q. During the time that you were being courted by the defendant Paul DiMatteo did you have sexual intercourse with your husband? A. No, sir; I didn't see him. Q. How long has it been since you saw your husband? A. After I came out of the hospital I told my husband about it. Q. When you were being courted by Paul DiMatteo were you being seen by your husband? A. No sir." In addition to objecting to the admission of this evidence, counsel for appellant unsuccessfully moved that it be stricken out. The defendant offered no testimony but presented a point requesting the trial judge to direct a verdict of acquittal.

We note from the record that appellant, in addition to the charge to which we have referred (drawn under Section 37 of the Act of March 31, 1860, P. L. 382,) was also separately indicted under the Act of July 11, 1917, P. L. 773, as amended by the Act of July 21, 1919, P. L. 1075, for having wilfully neglected and refused to contribute reasonably to the support and maintenance of the child born to the prosecutrix. Appellant was convicted under both indictments, but only one sentence was pronounced. As that sentence was in the form authorized by the section of the Penal Code, above cited, we treat the appeal taken to No. 399 October Term, 1936, of this court, from the judgment at No. 267 June Sessions, 1936, of the court below, as the controlling appeal.

Both indictments were submitted to the jury with the instruction that if they believed the testimony of the prosecutrix with relation to intercourse with appellant and the absence of any sexual relations with her husband during the period within which the child must have been begotten they might convict appellant under both indictments. The jury having returned a verdict of guilty on each indictment, counsel for appellant filed motions in arrest of judgment and for a new trial.

One of the reasons assigned for a new trial was the admission of the above quoted testimony of the prosecutrix. The Shepherd case was cited and discussed in the opinion written by the trial judge for the court in banc in support of its refusal of a new trial, but that part of the opinion of the Supreme Court in the Shepherd case which clearly indicated a new trial should have been granted in this case seems to have been completely ignored.

In the Shepherd case, the Chief Justice, after pointing out that there was evidence of non-access from other sources than the testimony of prosecutrix, said, "had the case rested upon the evidence of the woman alone, *I should have been decidedly for a new trial,* but it appears to me that without her testimony the jury would have been warranted in concluding that there had been no access." (Italics supplied)

Here, there was no evidence of non-access except that of the prosecutrix, and with this plain language of the Supreme Court as a guide a new trial should have been promptly directed.

The moment it appeared in the case at bar that the prosecutrix was a married woman at the time the alleged bastard child was begotten, the burden of rebutting the presumption that it had been begotten by her husband was imposed upon the Commonwealth.

Under the rule in force in England, in this state, and in at least eighteen sister states, the prosecutrix

was not, as we have seen, a competent witness to prove non-access of her husband.

Eminent writers hold divergent views of the origin of the rule and with respect to the wisdom of maintaining and enforcing it. An interesting discussion of the whole question will be found in the annotation to *Lynch v. Rosenberger et al.,* 121 Kan. 601, 249 Pac. 682, 60 A. L. R. 376, in which the criticism of Dean Wigmore (4 Wigmore on Evidence (2d ed. 1923) §2064) is included.

No matter what diversity of opinion may prevail in other jurisdictions, neither a trial court, nor this court, may weaken the force of the rule on account of the difficulties sometimes attendant upon an effort to secure competent evidence rebutting the presumption of legitimacy. Nor does the Act of May 23, 1887, P. L. 158, as amended by the Acts of April 27, 1909, P. L. 179, and May 11, 1911, P. L. 269, 19 PS §683, relating to the competency of husband and wife to testify against each other in certain criminal proceedings, modify it in any way.

Under the situation which arose in this case, the door was open to the Commonwealth to overthrow the presumption by proving, if it could, such facts as would reasonably justify a jury in concluding that the husband of the prosecutrix could not, in the course of nature, have been the father of the child. It is no longer the rule that the negative proposition of non-access must be absolutely proven.

In the recent case of *Dulsky v. Susquehanna Collieries Co.,* 116 Pa. Superior Ct. 520, 177 A. 60, this court considered the quality and extent of evidence sufficient to overthrow the presumption of legitimacy. Reference was there made to the opinion of Judge CARDOZO, now Mr. Justice CARDOZO of the Supreme Court of the United States, in the case of In re *Findlay,* 253 N. Y. 1, 170 N. E. 471, in which it was stated that the old rule,

that if a husband, not physically incapable, was within the four seas of England during the period of gestation the presumption of legitimacy was conclusive, had been exploded in 1732 by the decision in *Pendrell v. Pendrell*, 2 Strange 925.

The modern rule, in the language of the Findlay case, is that "countervailing evidence may shatter the presumption though the possibility of access is not susceptible of exclusion to the point of utter demonstration."

The first assignment, alleging error in imposing the sentence and judgment appealed from, and the fourth, based upon the admission of the testimony of the prosecutrix relative to non-access of her husband, are sustained.

Judgment reversed with a venire.