Commonwealth *v.* Barone, Appellant.

Argued September 28, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*J. D. Barsky,* with him *David A. Kraftsow,* for appellant.

*Norris S. Barratt,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

74

OPINION BY FINE, J., January 14, 1949:

Dominic P. Barone, appellant, was convicted upon an indictment charging him with having wilfully neglected to contribute to the support and maintenance of three children born out of wedlock. Appellant now complains that (1) the court below erred in overruling his demurrer for the reason that the Commonwealth's evidence was insufficient to rebut the presumption of legitimacy and of access by the husband and (2) the evidence viewed in its entirety was insufficient to sustain his conviction.

The prosecutrix testified as follows: She was married to John Clarkson in 1928 and had three children by him. In 1935, after having separated from her husband, she met the appellant. They lived together from 1935 until 1941 at various addresses in Philadelphia, during which time three children were born to her: Barbara, born on May 29, 1938; Ronald, born July 13, 1939; and Raymond, born December 8, 1940. When the three children in question were conceived, her husband was alive and no divorce had been secured by either spouse.

Dolores Clarkson, the nineteen year old daughter of the prosecutrix and her husband, John Clarkson, was the Commonwealth's sole witness as to nonaccess. She testified that in 1937 she lived at 768 North Ringgold Street, Philadelphia, with her mother and appellant; that her father, John Clarkson, did not live there with the prosecutrix at any time; that in October, November and December of 1938 she, with the prosecutrix and appellant, lived at 31st and Titan Streets, Philadelphia, and her father did not live there at any time; and, that in January, February and March, 1940, she, with prosecutrix and appellant, lived together at 26th and Wharton Streets in the same city, and at no time did her father live there. On cross examination she testified as follows: "Q. Did he (John Clarkson) come around the house to see you? A. He saw us after school around the

school. Q. You saw him quite frequently didn't you after school? A. Not so very often. Q. Didn't your father ever come around and see you at home when he missed you at school? A. . . . Well, everyone was there when he came to see us."

Appellant admitted that he had lived with the prosecutrix and had sexual relations with her from 1935 to 1941, and that from May 28, 1938, down to and including April, 1947, he contributed to the support of all three children.

Upon a clear showing that the prosecutrix was the wife of Clarkson, the burden was upon the Commonwealth to rebut the presumption of legitimacy by sufficient competent proof to sustain a finding, beyond a reasonable doubt, of nonaccess by her husband during the period each child had been conceived or begotten. The wife was properly considered incompetent to testify as to nonaccess although competent as to the criminal connection: *Commonwealth v. Gantz*, 128 Pa. Superior Ct. 97, 193 A. 72; *Commonwealth v. DiMatteo*, 124 Pa. Superior Ct. 277, 188 A. 425.

Appellant contends that the Commonwealth's evidence did not exclude absolutely the possibility of access by the prosecutrix's husband during the period the children were conceived. This, of course, the Commonwealth was not required to do. Commonwealth's burden was to prove beyond reasonable doubt such facts as would justify the jury in concluding that the husband of the prosecutrix could not in the course of nature have been the father of the children. The negative proposition of nonaccess need not be absolutely proven. Legitimacy is not to be sustained "by a sacrifice of probabilities in a futile quest for certainty." Common sense and reason are not to be shattered in order to uphold the presumption of legitimacy. It is not probable in the circumstances of this case that the prosecutrix and her husband covertly met from time to time and in clandestine meetings yielded to sexual relations. We are

not always required to impute to separated spouses a stealthiness to sordidly accomplish a sexual purpose which could normally and naturally be attained by a mere adherence to the marital relationship still subsisting between them. Particularly is this so where, as here, the impact of human nature is buttressed by the testimony of the daughter of the prosecutrix and her husband.

Countervailing evidence may rebut the presumption of legitimacy of a child born of a married woman although the possibility of access by the husband "is not susceptible of exclusion to the point of utter demonstration": *In re Findlay*, 253 N. Y. 1, 170 N. E. 471; *Commonwealth v. Levandowski*, 134 Pa. Superior Ct. 477, 481, 4 A. 2d 201; *Commonwealth v. Gantz*, 128 Pa. Superior Ct. 97, 193 A. 72; *Commonwealth v. Atherton*, 129 Pa. Superior Ct. 64, 194 A. 779. Cf. *Dulsky v. Susquehanna Collieries Co.*, 116 Pa. Superior Ct. 520, 177 A. 60.

The testimony was sufficient in quantity and quality to permit a jury to determine the fact of nonaccess of the husband at or about the respective times of conception. Cf. *Commonwealth v. Shepherd*, 6 Binney 283, The trial judge did not err in refusing to sustain appellant's demurrer. In passing upon this question, appellant's continuing oral and written admissions of paternity and his contributions to their support over a course of years have not been considered. "Without competent proof of non-access defendant's written admission of paternity was not admissible in evidence, as the presumption of legitimacy cannot be overcome by the assertion of a putative father": *Commonwealth v. Kerr*, 150 Pa. Superior Ct. 598, 604, 29 A. 2d 340.

There is no merit to appellant's contention that the evidence in its entirety does not support a conviction. Appellant testified and admitted that he had lived with the prosecutrix and had relations with her from 1935 to 1941; that from May 28, 1938, down to and including

April, 1947, he contributed to the support of all three children; that in 1941, when he went into the military service, he had admitted to a chaplain that the three children were his and had made a statement under oath to that effect; and, that an allotment of $82.00 per month had been forwarded to the prosecutrix and the three children. Regarding his conversation with the chaplain, he was asked on cross examination: "Q. There was no doubt in your mind then that you were the father of these children, was there? A. There was no doubt in my mind then." Appellant has corroborated the prosecutrix in many material respects. His declarations of admitted paternity and his conduct consistent therewith, considered in conjunction with the Commonwealth's evidence, were clearly sufficient to warrant the findings of the jury.

Pursuant to the authority conferred upon him by the Act of June 24, 1939, P. L. 872, § 732, 18 PS 4732, the trial judge, instead of imposing a fine or imprisonment, or both, made an order directing appellant to contribute toward the support and maintenance of the three children the sum of $4.00 per week for each child, until they reach the age of eighteen years and/or until further order of the court.

Order affirmed.