## Commonwealth v. Knepp

*Harry B. Thatcher*, for Commonwealth.
*Houck & Barron*, for defendant.

LEHMAN, P. J., October 31, 1956.—Defendant, Norman C. Knepp, was charged with having wilfully neglected or refused to contribute reasonably to the support and maintenance of a child born out of lawful

wedlock under The Penal Code of June 24, 1939, P. L. 872, sec. 732, 18 PS §4732. Prosecutrix, Gladys P. Fisher, was a married woman at the time of conception and birth of the alleged bastard child. At the close of the Commonwealth's case, we sustained defendant's demurrer to the evidence because of Commonwealth's failure to rebut the presumption of legitimacy. From this judgment the Commonwealth has appealed.

The Commonwealth's testimony may be summarized as follows. Prosecutrix testified she and Milford L. Fisher were married in March 1949, separated in June 1950, and were divorced from each other the latter part of 1953. Prosecutrix swore she dated defendant the early part of 1951 prior to his entering military service and again "in the middle of September" of that year when she saw him almost every night during his furlough for a 10- to 14-day period. She fixed this period more definitely by stating: "I believe it was the second and third week of September". She testified that he came to her apartment in Lewistown and they had sexual relations almost every night he was home on furlough.

She testified she subsequently wrote defendant that she was pregnant; he thereafter corresponded with her and professed his love for her. He visited her shortly before the baby's arrival and following its birth. Prosecutrix gave birth to the child in question on July 23, 1952. She named him David Carl Fisher. According to Mrs. Fisher, defendant sent her money toward expenses she had incurred and while the child was in the custody of Mrs. Black, mother of prosecutrix, defendant provided weekly support and occasional gifts. Defendant's payments for support of the child ended about November 27, 1954. Prosecutrix filed the complaint which is the basis of this action on August 3, 1956.

Throughout all of 1951, the year prosecutrix conceived the child in question, Milford L. Fisher, her husband, lived in Granville, a village six or eight miles from the Lewistown apartment of prosecutrix. Mrs. Black, mother of prosecutrix, was the only other witness for the Commonwealth. She testified that on her visits to her daughter's apartment two or three times a week she observed no clothes, furniture or furnishings belonging to Milford L. Fisher. Mrs. Black admitted seeing Mr. Fisher each week when he called by automobile at her home in Lewistown Heights to reimburse her for the cost of maintenance of Robert Fisher, the oldest child of prosecutrix and her husband. Prosecutrix gave birth to four children before she and Milford L. Fisher were divorced from each other. David Carl Fisher, the child in question, is next to the youngest. Two of prosecutrix's four children were cared for by her mother. Mrs. Black had custody of Robert, the oldest, from the time he was almost five years of age and beginning in 1950 and of David from the time he was seven months old until August 1956.

The principle of law governing these cases was summarized in Cairgle v. American Radiator and Standard Sanitary Corporation, 366 Pa. 249, 255, 77 A. 2d 439, 442, wherein Mr. Justice Bell, speaking for the Supreme Court, in affirming judgment of the Superior Court said:

"For reasons of public policy it has been the law for centuries that there is a tremendously strong presumption that children are legitimate. The old rule, that the presumption of legitimacy could not be overcome by any proof less than the absence of the husband beyond the seas immediately prior to and during the whole period of gestation, was so contrary to human experience that it was abandoned in Pennsylvania as early as 1814: Commonwealth v. Shepherd, 6 Binney

283; District of Columbia's Appeal, 343 Pa. 65, 76, 21 A. 2d 883. The presumption of legitimacy is, however, still one of the strongest known to the law and can be overcome only by proof of facts establishing non-access or that the husband was impotent or had no sexual intercourse with his wife at any time when it was possible in the course of nature for the child to have been begotten: Dennison v. Page, 29 Pa. 420, 422; Dulsky v. Susquehanna Collieries Co., 116 Pa. Superior Ct. 520, 525, 177 A. 60; Janes's Estate, 147 Pa. 527, 530, 23 A. 892. This is the modern rule.

"We may well repeat what was so aptly said by the Court in Dennison v. Page, 29 Pa. 420, 422, 423, 425, 426: 'Where a child is begotten and born whilst its mother is a married woman, its legitimacy is presumed, until the contrary is clearly made to appear. . . . A child born in wedlock, though born within a month or a day after marriage, is legitimate by presumption of law. . . . Where the husband . . . has access to the mother of the child, the presumption that he is its father is *conclusive*. . . . (T)he fact that the wife was living in adultery was not sufficient to destroy the legitimacy of a child born in wedlock (unless there) . . . be evidence from which a jury could find non-access'.

"In order to successfully rebut the presumption of legitimacy, the evidence of non-access or lack of sexual intercourse or impotency must be clear, direct, convincing and unanswerable (Thorn Estate, 353 Pa. 603, 606, 46 A. 2d 258; Mays' Estate, 141 Pa. Superior Ct. 479, 489, 15 A. 2d 569; McAnany's Estate, 91 Pa. Superior Ct. 317, 327), although it is not necessary that the possibility of access be completely excluded: Mays' Estate, 141 Pa. Superior Ct. 479, 15 A. 2d 569; Commonwealth v. Barone, 164 Pa. Superior Ct. 73, 63 A. 2d 132; Commonwealth v. Gantz, 128 Pa. Superior Ct. 97, 193 A. 72; Dulsky v. Susquehanna Collieries

Co., 116 Pa. Superior Ct. 520, 531, 177 A. 60; Commonwealth v. DiMatteo, 124 Pa. Superior Ct. 277, 188 A. 425; In re Findlay, 253 N. Y. 1, 170 N. E. 471 (opinion by Judge Cardozo). Moreover, our public policy is so firmly established and so strong that the courts have repeatedly declared that 'non-access cannot be testified to by either the husband or wife in order to overcome the presumption of legitimacy: Com. v. Shepherd, 6 Binn. 283; Dennison v. Page, 29 Pa. 420; County of Tioga v. South Creek Twp., 75 Pa. 433': District of Columbia's Appeal, 343 Pa. 65, 76, 21 A. 2d 883. In Janes's Estate, 147 Pa. 527, 531, 23 A. 892, the Court said: 'A child born or begotten in wedlock is presumed to be legitimate, and neither the mother nor her husband can bastardize it by testifying to non-access.'

"It follows that a wife is competent to prove the fact and time of her marriage, the date and place of birth of her child, the name she gave the child, the fact of access, her separation from her husband, her own adultery, where she and the child have lived, who supported the child, and any other independent facts affecting the question of legitimacy, even though some of those facts may result in establishing illegitimacy: Janes's Estate, 147 Pa. 527, 530, 23 A. 892; Dennison v. Page, 29 Pa. 420, 423, 424, 425; Commonwealth v. Shepherd, 6 Binney 283; Commonwealth v. Gantz, 128 Pa. Superior Ct. 97, 193 A. 72; Commonwealth v. Atherton, 129 Pa. Superior Ct. 64, 194 A. 779; Commonwealth v. Barone, 164 Pa. Superior Ct. 73, 63 A. 2d 132; Commonwealth v. DiMatteo, 124 Pa. Superior Ct. 277, 188 A. 425."

A careful examination of the cases discloses that there have been comparatively few cases where the Commonwealth successfully met the burden of rebutting the presumption of legitimacy where prosecutrix was a married woman. In each of the following cases

the presumption of legitimacy was successfully rebutted.

In Cairgle v. American Radiator and Standard Sanitary Corporation, supra, the referee found and the workmen's compensation board affirmed his findings that Cairgle and his wife separated in 1932 and thereafter he lived with another woman continuously until his death, that meanwhile Cairgle's wife lived in a meretricious relationship with a man by the name of . Owens in a home apart from her husband, that she bore three children following said separation with her husband and to each at the time of birth she gave the name of Owens, that said children always were known as Owens and never as Cairgle, that they had always lived with Owens and never Cairgle and that Owens always supported them and Cairgle never supported them.

In Dulsky v. Susquehanna Collieries Co., 116 Pa. Superior Ct. 520, 177 Atl. 60, decedent and claimant were married in June 1919 and separated in September 1919. Claimant lived with Solway both prior to her marriage with decedent and again from May 1920 until 1927 in Mahanoy City, eight miles from Shaft, where her husband, decedent, had resumed residence following their separation. During the second time claimant lived with Solway four children were born to her, the first child on November 29, 1921, and the last on May 13, 1927. The woman with whom decedent boarded testified he never went to Mahanoy City following his separation from his wife. At the time of hearing, claimant had one child attending school and she was registered as Irene Solway. Another child was listed on hospital records as the son of Solway. The workmen's compensation board's finding that nonaccess had been properly proved was upheld by the Superior Court.

In Commonwealth v. Gantz, 128 Pa. Superior Ct. 97, 193 Atl. 72, a 14-year-old legitimate daughter testified she had no recollection of her father, that she never had seen her father and mother together anywhere, that she had been constantly living with her mother and Gantz, appellant, for the past seven or eight years during which time the six children in question had been born, that she never had seen any man in the house except Gantz and that Gantz and her mother were known as "man and wife in the neighborhood."

In Commonwealth v. Levandowski, 134 Pa. Superior Ct. 477, 4 A. 2d 201, appellant and prosecutrix occupied the same bedroom from early in 1936 until May 10, 1936; a child was born to prosecutrix on January 24, 1937; husband of prosecutrix had left her eight or nine years beforehand and at the date of the trial was living with another woman in another part of Philadelphia.

In Commonwealth v. Barone, 164 Pa. Superior Ct. 73, 63 A. 2d 132, prosecutrix separated from her husband and from 1935 until 1941 she and appellant lived together during which time three children were born. Her 19-year-old legitimate daughter and the latter's husband testified to nonaccess. The daughter testified she lived with her mother and appellant in 1937 and parts of 1938 and 1940 and at no time did her father live with her mother.

In Commonwealth v. Boyer, 168 Pa. Superior Ct. 16, 76 A. 2d 230, mother of prosecutrix, with whom prosecutrix resided, testified that the husband of prosecutrix was in the service, stationed in Oklahoma, on and after June 12, 1945, had not been home since that date, that in August 1945, appellant agreed to marry prosecutrix if she would divorce her husband, that appellant visited her home two and three times weekly, often staying overnight and sleeping with prosecutrix and that the child in question was born May 23, 1946.

The brother of prosecutrix testified he lived in his mother's home from June to December of 1945 and at no time saw prosecutrix's husband.

In Commonwealth v. Becker, 168 Pa. Superior Ct. 69, 76 A. 2d 657, the husband of prosecutrix entered the military service and never thereafter returned to the home or community where prosecutrix resided. The mother of prosecutrix testified that prosecutrix lived with her during all of this period of time, had been with her practically all of the time, that prosecutrix had not been away from the home except for occasional evening visits. The father and brother of prosecutrix corroborated this testimony.

In Commonwealth v. Cicerchia, 177 Pa. Superior Ct. 170, 110 A. 2d 776, prosecutrix gave birth to a child March 7, 1954. Her husband had been arrested on May 4, 1953, and remained continuously in jail or penitentiary from that date. The court held that proof that the husband did not have access to his wife for 307 days prior to the birth of the child was sufficient to meet the burden.

In Commonwealth v. McMillen, 178 Pa. Superior Ct. 581, 115 A. 2d 816, prosecutrix, after separation from her husband, lived in a rural section with her mother, stepfather, sister and 10-year-old son. Husband lived about 30 miles distant and had he visited his wife, her mother and sister, under the evidence in the case, would have known of it. These witnesses testified he came to the home only once during the possible period of conception, during the day, to bring presents for and to visit for one hour with his son at Christmastime. At no time during this visit was he alone with prosecutrix.

After analyzing these cases we agree with Judge Bolger of Philadelphia when he recently stated that the "cases . . . in which the presumption was successfully rebutted . . . involve situations where a wife was

living in open adultery by actually cohabiting with a paramour at a place from which her husband was either excluded or at some considerable distance from where he lived": Hamilton Estate, 8 D. & C. 2d 293, 297.

In the instant case, neither prosecutrix nor her husband lived in open adultery by cohabiting with a paramour. At all times during the period of his wife's conception, Milford L. Fisher never resided more than six to eight miles from her apartment. Fisher called upon his wife's mother once each week during this period of time. The most direct route from Fisher's home in Granville to his wife's mother's home at Lewistown Heights was through Lewistown. He would pass within one block of his wife's apartment. Mrs. Black, mother of prosecutrix, was the only witness called as to nonaccess of Fisher but the most she could say was that on her visits to her daughter's apartment two or three times a week she observed no clothes, furniture or furnishings belonging to Fisher. There was no testimony from a neighbor or companion of prosecutrix that Fisher was never seen going into or out of his wife's apartment. Whereas, in many of the reported cases, the child or children were given the name of the putative father, in this case prosecutrix gave the child her married name.

The testimony before us falls far short of that required to overcome the presumption of legitimacy. After a diligent search, we can find no case that would provide authority for the submission to a jury of the testimony in the instant case.

The presumption that a child born in wedlock is legitimate is, for reasons of public policy, a tremendously strong presumption. It is based upon the proposition that an innocent child should not be made the victim of the transgressions of his parents. Although the presumption is strong, it can be rebutted. In order

to do so, however, proof of facts establishing nonaccess must be clear, direct, convincing and unanswerable: Cairgle v. American Radiator and Standard Sanitary Corporation, supra.

The burden is upon the Commonwealth to rebut by witnesses other than prosecutrix the presumption of legitimacy by sufficient competent proof to sustain a finding beyond a reasonable doubt that the husband did not have access to his wife, prosecutrix, during the period within which the child must have been begotten: Commonwealth v. Becker, supra.

In Commonwealth v. Atherton, 129 Pa. Superior Ct. 64, 194 Atl. 779, evidence that after marital separation, husband continued living in same borough as wife but apart from her was held insufficient to prove beyond a reasonable doubt that the husband did not have access to his wife, prosecutrix, and defendant's conviction was reversed.

A defendant's oral and written admissions of paternity and his contributions to the support of the child cannot take the place of competent proof of nonaccess. "Without competent proof of non-access defendant's written admission of paternity was not admissible in evidence, as the presumption of legitimacy cannot be overcome by the assertion of a putative father. Commonwealth v. Kerr, 150 Pa. Superior Ct. 598, 604, 29 A. 2d 340, 343": Commonwealth v. Barone, supra.

While not relating to the burden of proving nonaccess, it should be noted that Mrs. Fisher, prosecutrix, gave birth to the child on July 23, 1952. She testified she had sexual relations with defendant almost every night of his 10 to 14-day furlough which was "the second and third week of September." September 22, 1951, is the concluding date of the third full week in that month. September 22, 1951, to July 23, 1952, is a period of 305 days. Judge Woodside in his dissenting opinion in Commonwealth v. Watts, 179 Pa. Superior

Ct. 398, 419, 116 A. 2d 844, 855, reviewed at considerable length various medical authorities on the period of gestation and quoted with approval the following statement from Commonwealth v. Hoover, 3 Clark Appendix 195: "A period of gestation in excess of 300 days is unusual and improbable, and that the evidence to establish the existence of such a considerable period should be clear and free from doubt, that the witness should possess a character beyond reproach, and her testimony should be consistent and uncontradicted in all material facts."

Because the Commonwealth failed to rebut the presumption of legitimacy by sufficient competent proof, we sustained defendant's demurrer.