Commonwealth ex rel. Leider, Appellant, *v.*
Leider.

Argued November 13, 1968. Before BELL, C. J.,
JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Joseph N. Bongiovanni, Jr.*, with him *Stassen and Kephart*, for appellant.

*Samuel Kagle*, with him *Oscar Brown*, for appellee.

OPINION BY MR. JUSTICE JONES, May 28, 1969:

Andree Leider (appellant) married David MacFarland in 1946 and of that marriage three children were born. The MacFarlands separated in 1956 and were divorced January 8, 1963. Appellant did not live with MacFarland after 1956 although he resided only a few blocks away and occasionally visited the children at her home.

Some time in the fall of 1960, appellant met David Leider (Leider) and soon thereafter began having sexual relations with him. Toward the end of 1961 the couple began living as man and wife and were eventually married January 17, 1963, nine days after appellant's divorce from MacFarland. Meanwhile, on August 9, 1962, appellant gave birth to a female child, Suzanne Mary, whose paternity is the subject of the present suit.

On November 18, 1965, appellant filed a petition in the County Court of Philadelphia County against Leider for support of herself and the child. The Leiders were divorced during the pendency of the sup-

port proceeding and, as a result, the proceeding for the support of appellant was abandoned. The County Court entered an order requiring Leider to pay $20.00 weekly for the support of the child. Leider appealed to the Superior Court which reversed the support order, holding that Suzanne was the legitimate child of MacFarland since he and appellant were still married when the child was born.[1] (*Commonwealth ex rel. Leider v. Leider*, 210 Pa. Superior Ct. 433, 233 A. 2d 917 (1967)).

The pivotal issue on this appeal is the propriety of the trial court's ruling allowing MacFarland and appellant to testify that they had not had sexual relations since 1956 although there is no question that they were still married when the child was born. In reversing the County Court's order, Judge WRIGHT, speaking for the majority of the Superior Court, relied upon the well-established rule in this Commonwealth that a husband and wife cannot bastardize a child by testifying to their nonaccess to each other at the time the child was conceived. This rule is set forth in *Cairgle v. American Radiator and Standard Sanitary Corp.*, 366 Pa. 249, 255, 256, 257, 77 A. 2d 439 (1951): "For reasons of public policy it has been the law for centuries that there is a tremendously strong presumption that children are legitimate. . . . In order to successfully rebut the presumption of legitimacy the evidence of non-access or lack of sexual intercourse or impotency must be clear, direct [,] convincing and unanswerable. . . . Moreover, our public policy is so firmly established and so strong that the courts have repeatedly declared that 'non-access cannot be testified to by either the husband or wife in order to overcome the presumption of legitimacy [citing authorities]' . . . .

---

[1] President Judge ERVIN and Judge HOFFMAN dissented.

In Janes's Estate, 147 Pa. 527, 531, 23 A. 892, the Court said: 'A child born or begotten in wedlock is presumed to be legitimate, and neither the mother nor her husband *can bastardize it* by testifying to nonaccess.' " (Emphasis added) See also: *Manfredi Estate*, 399 Pa. 285, 289, 159 A. 2d 697 (1960); *Commonwealth ex rel. O'Brien v. O'Brien*, 390 Pa. 551, 555, 136 A. 2d 451 (1957).

In dissenting, Judge HOFFMAN attacked the validity of the rule in general.[2] We find it unnecessary, however, to question the theory behind the rule in this case, for we conclude that the trial court's ruling does not offend the black-letter rule laid down in *Cairgle*. If Leider is found to be the father of this child, the child is not bastardized for Leider subsequently legitimated the child by marrying the appellant-mother. Even though the child was born when Leider and appellant were not married, the child, if fathered by Leider, was nevertheless legitimated by their subsequent marriage.[3] Therefore, since the child will not be bastardized by the testimony of the mother and her then husband, the rule does not prohibit their testifying to nonaccess. The facts established in the record surrounding the birth of the child underscore the artificial result reached in this case if the rule is rigidly applied. When the child was conceived, Leider and appellant were living together; Leider took appellant to the hospital for the birth of the child, consented to

[2] For a criticism of the rule, see VII Wigmore, Evidence, §2063; McCormack, Evidence, §67.

[3] "In any and every case where the father and mother of an illegitimate child or children shall enter into the bonds of lawful wedlock and cohabit, such child or children shall thereby become legitimated, and enjoy all the rights and privileges as if they had been born during the wedlock of their parents." Act of May 14, 1857, P. L. 507, §1, 48 P.S. §167,

a Caesarian section and paid the hospital bill; the child's birth certificate bears Leider's name as the father of the child; the Leiders' 1962 joint federal tax return lists the child, "Suzanne Mary Leider," as a dependent. These facts compel us to agree with the conclusion reached by the court below and the two dissenters on the Superior Court that Leider is the child's father. If the trial court's conclusion be correct, it follows that, although the child was born out of wedlock between appellant and Leider and was, therefore, illegitimate, nevertheless the subsequent marriage of the child's father and mother rendered the child legitimate. Under these circumstances, the testimony of MacFarland and appellant as to nonaccess did not bastardize the child. By the subsequent marriage, legitimacy followed by operation of law and there was, therefore, no reason to prohibit MacFarland and appellant from testifying.

The bulk of the case law in our Commonwealth simply affirms the ancient maxim prohibiting testimony of nonaccess. However, two lower court opinions fully recognize the logical exception relied upon by the court below and the two dissenters on the Superior Court. In *Schumacher's Estate*, 41 Pa. D. & C. 100, 103, 104 (1941), Judge (now President Judge) KLEIN of the Philadelphia Orphans' Court said: "There can be no question that the general rule in Pennsylvania holds that a mother is incompetent to testify as to nonaccess on the part of her lawful husband if the result of such testimony would be to bastardize her children. . . .

"In the face of the many appellate court decisions in this State affirming the rule, I do not have the temerity to challenge it. I do, however, believe that it should be limited to those cases where the direct effect of the testimony is to bastardize the children, for

it is only in those cases that the reason for the application of the rule can exist." See also: *Commonwealth v. Tucker*, 24 Pa. D. & C. 2d 674 (1961).

Judge WRIGHT, in his opinion for the majority of the Superior Court, also stated that appellant had not presented evidence sufficient to overcome the presumption that a child born during a lawful marriage is the legitimate child of the mother and her then husband. This presumption is designed to avoid the finding that a child is illegitimate, if at all possible. Since the child's legitimacy is not at issue under the factual background herein presented, in our view the presumption is inapplicable. Assuming, arguendo, that the presumption is applicable, we cannot agree with Judge WRIGHT'S statement, wholly unsupported by any reference to the record, that appellant's case failed to muster the necessary proof. The court below relied on the following evidence: (a) MacFarland's and appellant's testimony that they had not had intercourse since 1956; (b) the testimony of the MacFarlands' fifteen-year-old son that he had lived with his mother until 1965, that Leider came to live with appellant in 1959 and that appellant never spent any nights with MacFarland; (c) the corroborating testimony of the MacFarlands' nineteen-year-old daughter; (d) the testimony of two neighbors who, although called by Leider, testified that they had not seen MacFarland at the house after July of 1961—thirteen months before the child's birth; (e) the testimony of a third friend to the same effect; (f) Leider's testimony that he was intimate with appellant and was having sexual relations with her around the time the child was conceived. We hold that this evidence was fully sufficient to rebut the presumption that MacFarland, by reason of the marriage ties, is the child's father—if the presumption is, in fact, presently applicable.

Order of the Superior Court reversed.

Mr. Justice COHEN dissents.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

It is my view that the rule proscribing husband and wife from testifying to nonaccess is an anachronism and that the time for completely abandoning this rule has arrived. For the law to exclude the very evidence which may go to the heart of the issue in controversy on the basis of a public policy which has ceased to exist is to blind ourselves to the realities of today. In the early 18th century the presumption of legitimacy was conclusive and *no* evidence which would tend to bastardize the child born to a married couple was permitted to refute this conclusive presumption. *Rex v. Luffe*, 8 East 193, 208. But that was a rule for an era in which a child once considered illegitimate had no capacity to become legitimatized; the harshness of illegitimacy at common law required a rule which would protect a child born to a married mother, regardless of who the father was.

Today our laws are much more considerate of the status of illegitimacy; some states have abolished the status entirely; in all states a child may be subsequently legitimated; in most states illegitimate children have the same legal rights as legitimate offspring, see *Levy v. Louisiana*, 391 U.S. 68 (1968); even the social stigma attaching to the illegitimate status is less than in an earlier day. To reflect this change in attitude a rule other than one which would exclude the most relevant and compelling evidence is needed. And we need not search far for such a rule which will still reflect a desire to uphold the legitimacy of all children born to married women but at the same time recognize *actual* parenthood when the contrary holding would offend our sense of justice.

Chief Judge CARDOZO for the Court of Appeals of New York, in 1930, announced a rule which while permitting the admission of *all* relevant testimony also made clear that a mere preponderance of the evidence would not be enough to establish illegitimacy. "Issue will not be bastardized as the outcome of a choice between nicely balanced probabilities . . . . They will not be held legitimate by a sacrifice of probabilities in a futile quest for certainty. Some of the books tell us that, to overcome the presumption [of legitimacy], the evidence of nonaccess must be 'clear and convincing' . . . others that it must lead to a conclusion that is 'strong and irresistible' . . . others that it must be proof 'beyond all reasonable doubt' . . . . What is meant by these pronouncements, however differently phrased, is this, and nothing more, that the presumption will not fall unless common sense and reason are outraged by a holding that it abides." *In Re Findlay*, 253 N.Y. 1, 8, 170 N.E. 471, 473 (1930).

This should be the rule in this Commonwealth as well. We should not blind ourselves to germane evidence as to nonaccess when it is available; in our quest to maintain legitimacy we should not set up artificial rules of evidence which would "consecrate as truth the extravagantly improbable, which may be one, for ends juridical, with the indubitably false." *Id.* But by the same token we should require those who would establish illegitimacy through such testimony to carry a heavy burden, one which is in accordance with our public policy in favor of legitimate status.

As for the instant case, I would have permitted the evidence to be admitted as to nonaccess. But I would have placed the burden outlined by Chief Judge CARDOZO in *In Re Findlay*, supra, on appellant to establish that David Leider, and not Paul MacFarland, was the father. And if appellant had carried her burden,

I would have had David Leider declared the father of the child regardless of whether David Leider had subsequently married the child's mother.

I concur.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The majority Opinion reaches its result in the following erroneous and unjustifiable ways: (1) It ignores or circumvents and in effect overrules the well and long established rule in this Commonwealth, and for centuries throughout the civilized world, that a husband and wife cannot bastardize a child by testifying to their nonaccess to each other during the period when the child was conceived. This rule is based on the wise public policy of protecting at almost all costs "legitimacy." In order to protect and safeguard this policy, the Courts have said in clear and unambiguous language that there is a tremendously strong presumption that children are legitimate and the evidence to rebut this presumption of legitimacy must be clear, direct, convincing and irrefragable. *Cairgle v. American R. and S. S. Corp.*, 366 Pa. 249, 77 A. 2d 439; *Thorn Estate*, 353 Pa. 603, 46 A. 2d 258; *Manfredi Estate*, 399 Pa. 285, 159 A. 2d 697. Once an exception is made, you break down the dikes and undercut and change the public policy.

In the *Cairgle* case, the Court pertinently said (pages 255-257) : "For reasons of public policy it has been the law for centuries that there is a tremendously strong presumption that children are legitimate. The old rule, that the presumption of legitimacy could not be overcome by any proof less than the absence of the husband beyond the seas immediately prior to and during the whole period of gestation, was so contrary to human experience that it was abandoned in Pennsyl-

vania as early as 1814: Commonwealth v. Shepherd, 6 Binney 283; District of Columbia's Appeal, 343 Pa. 65, 76, 21 A. 2d 883. The presumption of legitimacy is, however, still one of the strongest known to the law and can be overcome only by proof of facts establishing non-access or that the husband was impotent or had no sexual intercourse with his wife at any time when it was possible in the course of nature for the child to have been begotten: Dennison v. Page, 29 Pa. 420, 422; Dulsky v. Susquehanna Collieries Co., 116 Pa. Superior Ct. 520, 525, 177 A. 60; Janes's Estate, 147 Pa. 527, 530, 23 A. 892. This is the modern rule.

"We may well repeat what was so aptly said by the Court in Dennison v. Page, 29 Pa. 420, 422, 423, 425, 426: 'Where a child is begotten and born whilst its mother is a married woman, its legitimacy is presumed until the contrary is clearly made to appear. . . . A child born in wedlock, though born within a month or a day after marriage, is legitimate by presumption of law. . . . Where the husband . . . has access to the mother of the child, the presumption that he is its father is *conclusive*. . . . [T]he fact that the wife was living in adultery was not sufficient to destroy the legitimacy of a child born in wedlock [unless there] . . . be evidence from which a jury could find non-access.'

"In order to successfully rebut the presumption of legitimacy, the evidence of non-access or lack of sexual intercourse or impotency must be clear, direct, convincing and unanswerable (Thorn Estate, 353 Pa. 603, 606, 46 A. 2d 258; Mays' Estate, 141 Pa. Superior Ct. 479, 489, 15 A. 2d 569; McAnany's Estate, 91 Pa. Superior Ct. 317, 327), although it is not necessary that the possibility of access be completely excluded: Mays' Estate, 141 Pa. Superior Ct. 479, 15 A. 2d 569; Commonwealth v. Barone, 164 Pa. Superior Ct. 73, 63 A. 2d

132; Commonwealth v. Gantz, 128 Pa. Superior Ct. 97, 193 A. 72; Dulsky v. Susquehanna Collieries Co., 116 Pa. Superior Ct. 520, 531, 177 A. 60; Commonwealth v. DiMatteo, 124 Pa. Superior Ct. 277, 188 A. 425; In re Findlay, 253 N.Y. 1, 170 N.E. 471 (opinion by Judge CARDOZO). Moreover, our public policy is so firmly established and so strong that the *courts have repeatedly declared that 'non-access cannot be testified to by either the husband or wife in order to overcome the presumption of legitimacy*:\* Com. v. Shepherd, 6 Binn. 283; Dennison v. Page, 29 Pa. 420; County of Tioga v. South Creek Twp., 75 Pa. 433': District of Columbia's Appeal, 343 Pa. 65, 76, 21 A. 2d 883. In Janes's Estate, 147 Pa. 527, 531, 23 A. 892, the Court said: 'A child born or begotten in wedlock is presumed to be legitimate, *and neither the mother nor her husband can bastardize it by testifying to non-access*.' . . ."

Moreover, as Mr. Justice (later Mr. Chief Justice) STERN, speaking for a unanimous Court, aptly said in *Thorn Estate*, 353 Pa., supra (page 606): "Our consideration of the case properly starts with a recognition of both the factual presumption that children are legitimate and the rule that, *to overcome it, there is required clear, direct, satisfactory and irrefragable proof to the contrary*: Senser v. Bower, 1 P. & W. 450; Thewlis's Estate, 217 Pa. 307, 66 A. 519; McAnany's Estate, 91 Pa. Superior Ct. 317; May's Estate, 141 Pa. Superior Ct. 479, 484, 15 A. 2d 569, 571."

In *Manfredi Estate*, 399 Pa., supra, this Court, in a unanimous Opinion, said (page 289): "For reasons of public policy it has been the law for centuries that there is a tremendously strong presumption that children who are born in wedlock are legitimate: Cairgle v. American R. and S. S. Corp., 366 Pa. 249, 77 A. 2d 439, and cases cited therein. In that case the Court

---

\* Italics throughout, ours.

said (pages 256-257) : ' "A child born or begotten in wedlock is presumed to be legitimate, and neither the mother nor her husband can bastardize it by testifying to non-access." ' " See also, *Commonwealth ex rel. O'Brien v. O'Brien,* 390 Pa. 551, 556, 136 A. 2d 451; *Commonwealth v. Carrasquilla,* 191 Pa. Superior Ct. 14.

In the *Carrasquilla* case, the Court, in a unanimous Opinion, said (page 16) : " 'The presumption of legitimacy is one of the strongest known to the law. It stands until met with evidence which makes it clearly appear that the husband cannot be the father of the child . . . So strongly does the policy of the law favor legitimacy that neither husband nor wife may testify as to non-access': Commonwealth v. O'Brien, 182 Pa. Superior Ct. 584, 128 A. 2d 164, affirmed 390 Pa. 551, 136 A. 2d 451. While non-access need not be proven absolutely, Commonwealth v. DiMatteo, 124 Pa. Superior Ct. 277, 188 A. 425, it was said in Thorn Estate, 353 Pa. 603, 46 A. 2d 258, that the evidence to overcome the presumption of legitimacy must be 'clear, direct, satisfactory and irrefragable.' "

(2) The majority Opinion, by a Procrustean stretch which out-Procrustes Procrustes, holds that a husband and wife can testify to nonaccess if the wife prior to the birth of a child was having intercourse with another man who subsequently married her after her divorce and after the birth of the child. This modification (a) makes a mockery of the above-quoted, long established and recently reiterated rule in Pennsylvania, and (b) is entirely unnecessary because the second husband can achieve his desired result by adoption proceedings.

(3) Not only does the majority ignore and in practical effect overrule the rule which prohibits a husband and wife from testifying to nonaccess, but it bases its final decision on testimony which it says "is

fully sufficient to rebut the presumption." Apart from the inadmissible testimony of the interested husband and the embittered wife who want her second husband to support the child, the evidence which the majority says is "fully sufficient" is very far from being clear, convincing and irrefragable. The following is the evidence on which the majority principally relies: (a) that the husband came to visit his wife only occasionally when she was living with another man and during the period of conception; (b) that *three* neighbors had testified that they had not seen the husband at the house where his wife lived (three blocks away) for a period of thirteen months before the child's birth; and (c) finally, that the husband's 15-year-old son had testified that his mother *never spent any nights* with her husband and this was corroborated by another child. The fact that several (3) neighbors had not seen the husband at his wife's home during the period of conception is miles away from proving that he wasn't there during that nine-month period. Furthermore, everybody in the world (with the apparent exception of a majority of this Court) knows that a woman does not have to spend nights, *or any night*, with a man in order to have a child by that man.

For these reasons, I vigorously dissent. I would affirm the Order of the Superior Court and I would reaffirm the long established rule of this Court.