## Whipp v. Whipp

*Oscar F. Spicer*, for petitioner.
*Robert W. Geigley*, for respondent.

MACPHAIL, *P. J.*, December 6, 1974—Petitioner, a Maryland resident, instituted the above-captioned matter under the provisions of the Revised Uniform Reciprocal Enforcement of Support Act (1968) (Article 89C, Anno. Code of Maryland; Act of December 6, 1972, P.L. 1365 [No. 291] 62 PS §§2043-1, et seq.) for the support of a female child. The case was placed on the hearing list for October 10, 1974. Prior to the hearing, defendant filed a motion to dismiss the petition on the ground that the petition showed on its face that the child was born January 17, 1962; that petitioner and respondent were not married until March 24, 1965, and that the marital status of petitioner at the time of the child's birth was not shown on the petition. Therefore, defendant claims that the petition was fatally defective. We issued a rule upon the Commonwealth to answer the motion and ordered that it also be heard on October 10, 1974.

On October 10, 1974, we denied the motion to dismiss as being without merit and then proceeded to take testimony. Petitioner and respondent testified. There were no other witnesses.

Defendant objected strenuously throughout the proceeding to all testimony by petitioner regarding paternity. However, as we noted, respondent also

testified on his own behalf. We took the matter under advisement and upon defendant's oral motion, granted him leave to obtain blood tests under the Act of July 13, 1961, P.L. 587, 28 PS §§307.1, et seq., provided such tests were made within 30 days of our order. A written order to that effect has been filed. To this date, no blood tests have been taken. Defendant in his brief states that if we find against him, he will then proceed to have the blood tests made. We hold that this is in violation of our order of October 10, 1974, and that respondent is now precluded from proceeding under the Act of 1961, supra.

While the central issue of whether or not respondent is the father of the child is very much in dispute, the background facts are not. At the time of the conception and birth of the child, the mother was married to one Harry Trago. She says they separated in 1959 but were not divorced until 1965. Respondent admitted he lived with petitioner off and on since 1961, that they were married in 1965, and that they are still married. The child in question was born January 17, 1962. The mother testified that respondent is the father of the child. The birth certificate offered in evidence names respondent as the father of the child. Respondent admitted that he has supported the child but quit paying because the mother was "drinking up" the payments. He testified that he was not sure if the child was his or not and that petitioner went out with other men during the period of gestation.

Until the enactment of the Revised Uniform Reciprocal Enforcement of Support Act (1968), supra, the law in Pennsylvania appeared to be clear that before an order could be enforced for the support of a child where paternity was disputed, defendant

was entitled to a jury trial: Commonwealth v. Dillworth, 431 Pa. 479 (1968). However, in Commonwealth v. Jacobs, 220 Pa. Superior Ct. 31 (1971), the Superior Court held that, unless defendant demanded a jury trial in a support matter, he would be deemed to have waived that right. The Revised Uniform Reciprocal Enforcement of Support Act, (1968), sec. 27, in Supp. 62 PS §2043-29, states that the court may adjudicate the issue of paternity if both parties are in court or if the court deems their presence unnecessary. Thus, it would appear that the legislature has acted to remove the problem raised in the Dillworth case and we hold that we do have the right to adjudicate paternity in this case.

With respect to the testimony of the witnesses, the act (section 22, 62 PS §2043-24) states that both the husband and wife are competent to testify to any relevant matter, *including marriage and parentage*. Moreover, our law is to the effect that where the father and mother of an illegitimate child marry, the child thereby becomes legitimate: Act of June 17, 1971, P.L. 175 (no. 17), 48 PS §167.

Under circumstances almost identical to those in the case now before us, the Pennsylvania Supreme Court held that the subsequent marriage of the child's parents rendered the child legitimate and, therefore, the testimony of the witnesses could not be excluded on the ground that such testimony would bastardize the child: Commonwealth, ex rel. Leider v. Leider, 434 Pa. 293 (1969). In the Leider case, the court also affirmed the lower court's decision that defendant was the father of the child on evidence strikingly similar to that offered by petitioner in the case now before us (see 434 Pa.

296, 297). In fact, the evidence in the case now before us may be even stronger by virtue of the fact that respondent here did not deny that he was the father of the child. The most he could say was that he wasn't sure if he was the father of the child.

Section 23 of the act, (62 PS §2043-25), states that the court shall be governed by rules of evidence applicable in a *civil* court action. Therefore, we need not find beyond a reasonable doubt that respondent is the father—petitioner's burden under section 23 is to prove paternity only by the fair weight or preponderance of the evidence. We feel that she has met this burden and that the rules of evidence as set forth in Commonwealth, ex rel. v. Goldman, 199 Pa. Superior Ct. 274 (1962), cited by defendant, and many other similar cases is inapplicable here because the child in question here has been legitimized by operation of law. We hold defendant to be liable for the support of Tammie Elizabeth Whipp.

Petitioner requests $25 per week for the child's support. She estimates food, clothing and housing costs that much. Petitioner is employed and takes home about $50 per week. Respondent's occupation is as a heavy equipment operator. He testified that he is presently unemployed, having been laid off on September 18th. His normal wage is $7 per hour. He had earned $5200 up to the time he was laid off in September. He owns real estate at R. D. 2, Fairfield, with a present market value of $5000. He has no physical disabilities and is employable. Under present circumstances we think the respondent should pay $10 per week for the support of his child. When respondent returns to work the order may be modified if a proper petition is filed.

## ORDER

And now, December 6, 1974, it is ordered that respondent shall pay the sum of $10 per week for the support of Tammie Elizabeth Whipp, together with 20 cents per payment for the Clerk of the Court's costs; that he enter into his own recognizance in the sum of $1000 to comply with this order, and that he pay the costs of prosecution. The effective date of this order shall be October 10, 1974.